**Walter HARRISON, Plaintiff,**

v.

**Charles L. MURPHY, and Anne S. Murphy, Defendants.**

**Civ. A. No. 2242.**

United States District Court
D. Delaware.

May 18, 1962.

Thomas H. Wingate and Newton White, Wilmington, Del., for plaintiff.

Courtney H. Cummings, Jr., of Killoran & Van Brunt, Wilmington, Del., for defendants.

LAYTON, District Judge.

This is an action by plaintiff under the Civil Rights Act, 42 U.S.C.A. § 1983[1] and 28 U.S.C.A. § 1343(3), to recover damages against the defendants, owners as tenants by the entireties of a restaurant, for refusing to allow him to remain seated in their diner after he

1. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * *, subjects * * * any citizen * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured * * *."

had ordered food, solely because he was a Negro.

The complaint alleges that this refusal to permit plaintiff to seat himself at the diner counter was "under color of a statute, ordinance, regulation, custom and usage of the State of Delaware * * *" with the result that plaintiff was deprived of a right, privilege, and immunity secured by the Constitution and laws of the United States. Injunctive relief was not sought, so 28 U.S.C.A. § 2281 is inapplicable here.

The defendants have filed a motion to dismiss upon the ground that the complaint fails to state a claim upon which relief may be granted.

It has been long settled that the Civil Rights Act, upon which this plaintiff relies, applies only as a restriction upon actions of a state. The Civil Rights Act enforces the provisions of the 14th Amendment which is not concerned with the acts of private individuals. As was said in the celebrated Civil Rights Cases, 109 U.S. 3, 11, 3 S.Ct. 18, 27 L.Ed. 835 (1883):

> "It is State action of a particular character that is prohibited. Individual invasion of individual rights is not the subject-matter of the amendment. It has a deeper and broader scope. It nullifies and makes void all State legislation, and State action of every kind, which impairs the privileges and immunities of citizens of the United States, or which injures them in life, liberty or property without due process of law, or which denies to any of them the equal protection of the laws."

Further, the Court states:

> "In this connection it is proper to state that civil rights, such as are guaranteed by the Constitution against State aggression, cannot be

impaired by the wrongful acts of individuals, unsupported by State authority in the shape of laws, customs, or judicial or executive proceedings. The wrongful act of an individual, unsupported by any such authority, is simply a private wrong, or a crime of that individual; an invasion of the rights of the injured party, it is true, whether they affect his person, his property, or his reputation; but if not sanctioned in some way by the State, or not done under State authority, his rights remain in full force, and may presumably be vindicated by resort to the laws of the State for redress."

109 U.S. at 17, 3 S.Ct. at 25. See also Screws v. U. S., 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L. Ed. 1161; Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

In addition to the requirement of "state action" just referred to, the language of the Civil Rights Act expressly requires that the action complained of must have been taken "under color" of law. As stated by Chief Justice (then Justice) Stone in United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941):

> "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law."

See also Monroe v. Pape, 365 U.S. 167, 184, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Screws v. U. S., 325 U.S. 91, 109, 65 S. Ct. 1031 (1945).

The plaintiff insists that "state action" is present in the form of the Delaware Innkeeper's Statute, 24 Delaware Code, Section 1501,[2] which he interprets

2. "No keeper of an inn, tavern, hotel, or restaurant, or other place of public entertainment or refreshment of travelers, guests, or customers shall be obliged, by law, to furnish entertainment or refreshment to persons whose reception or en- tainment by him would be offensive to the major part of his customers, and would injure his business.

"As used in this Section, 'customers' includes all who have occasion for en- tainment or refreshment."

as discriminatory in that it permits innkeepers, etc., to refuse to serve Negroes as such. The defendant takes the opposite view pointing to the language of the Supreme Court of Delaware in Wilmington Parking Authority v. Burton, 157 A.2d 894, 902 (Sup.Ct.Del.1960) in which that Court apparently held that Section 1501 was merely a restatement of. the common law and not discriminatory in character. However that may be, when the Burton case reached the Supreme Court of the United States, at least some of the justices expressed doubt not only as to the true interpretation of Section 1501 but also three of them thought the case should be remanded to the Delaware Supreme Court for a clarification of the meaning of its language. [3] See Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

■ Since the existence of "state action" rests upon a proper interpretation of Section 1501, what should be done? The section is a state statute. It is not for the federal courts to decide the constitutionality of a state statute where reasonable minds would differ as to its meaning and some of the justices of the highest Court have themselves differed or questioned the true meaning of the very statute. In such a case, the federal court should abstain until the parties have first obtained a construction of the Act from the highest state court. See generally, 1 Moore, Federal Practice, ¶ 0.203 at 2101–24 (1959). As Justice Harlan wrote in Harrison v. N. A. A. C. P., 360 U.S. 167, 176–177, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959):

"According every consideration to the opinion of the majority below, we are nevertheless of the view that the District Court should have abstained from deciding the merits of the issues tendered it, so as to afford the Virginia courts a reasonable opportunity to construe the three statutes in question. In other words, we think that the District Court in dealing with Chapters 31, 32, and 35 should have followed the same course that it did with respect to Chapters 33 and 36.

"This now well-established procedure is aimed at the avoidance of unnecessary interference by the federal courts with proper and validly administered state concerns, a course so essential to the balanced working of our federal system. To minimize the possibility of such interference a 'scrupulous regard for the rightful independence of state governments * * * should at all times actuate the federal courts,' Matthews v. Rodgers, 284 U.S. 521, 525 [52 S.Ct. 217, 76 L.Ed. 447], as their 'contribution * * * in furthering the harmonious relation between state and federal authority * * *.' Railroad Comm'n [of Texas] v. Pullman Co., 312 U.S. 496, 501 [61 S.Ct. 643, 85 L.Ed. 971]. In the service of this doctrine, which this Court has applied in many different contexts, *no principle has found more consistent or clear expression than that the federal courts should not adjudicate the constitutionality of state enactments fairly open to intrepretation until the state courts have been afforded a reasonable opportunity to pass upon them.* See, e. g., Railroad Comm'n [of Texas] v. Pullman Co., supra; [City of] Chicago v. Fieldcrest Dairies, Inc., 316 U.S. 168 [62 S.Ct. 986, 86 L.Ed. 1355]; Spector Motor Service, Inc., v. McLaughlin, 323 U.S. 101 [65 S.Ct. 152, 89 L.Ed. 101]; American Federation of Labor v. Watson, 327 U.S. 582 [66 S.Ct. 761,

---

3. In a concurring opinion, Justice Stewart stated that in his judgment, Section 1501 was discriminatory. 365 U.S. at 726–727, 81 S.Ct. at 862. In a dissenting opinion, Justice Frankfurter thought it was not. 365 U.S. at 727, 81 S.Ct. at 862. Also,

Justice Frankfurter joined with Justices Harlan and Whittaker in agreeing the case should be remanded to the Delaware Supreme Court for a further interpretation of Section 1501. 365 U.S. at 728, 81 S.Ct. at 862.

90 L.Ed. 873]; Shipman v. DuPre, 339 U.S. 321 [70 S.Ct. 640, 94 L. Ed. 877]; Albertson v. Millard, 345 U.S. 242 [73 S.Ct. 600, 97 L.Ed. 983]; Government & Civic Employees, etc. v. Windsor, 353 U.S. 364 [77 S.Ct. 838, 1 L.Ed.2d 894]. This principle does not, of course, involve the abdication of federal jurisdiction, but only the postponement of its exercise; it serves the policy of comity inherent in the doctrine of abstention; and it spares the · federal courts of unnecessary constitutional adjudication. See [City of] Chicago v. Fieldcrest Dairies, Inc., supra, [316 U.S.] at 172–173 [62 S.Ct. at 988]." (Emphasis supplied).[4]

■ While it is clear that the doctrine of abstention could be applied to these facts and the plaintiff required to seek a construction of Section 1501 from the Delaware Courts, nevertheless, as originally pointed out, there remains the question, a jurisdictional question moreover, whether the action here complained of was taken "under color" of law. If not, the plaintiff could not be successful even if "state action" were present. Under such circumstances, it would be clearly improper to burden the Delaware Supreme Court with a difficult question of statutory construction in advance of a determination by this Court of the "under color" of law point.

On this phase of the case, the plaintiff takes the position that the discriminatory act was "under color" of law inasmuch as it was sanctioned by Section 1501. Apparently, the plaintiff argues that Section 1501, in effect, constitutes an authorization by the State legislature to innkeepers, etc., to exclude Negroes as such whenever their presence would be offensive to a majority of their patrons. Further, he points to the Supreme Court definition of "under color" elsewhere quoted,[5] the general language of which, it must be conceded, would superficially include discriminatory actions on the part of restaurant owners under Section 1501. But merely because the action here complained of falls within the broad, general language of the Supreme Court definition is not enough. We have here a task of statutory construction which requires a finding of Congressional intent in the light of the conditions provoking the passage of the Act. The Civil Rights Act was passed shortly after the Civil War. Its main purpose was to provide a remedy against outrages perpetrated by the Ku Klux Klan. While the Congress had no jurisdiction to promulgate legislation punishing the Klan as such because of the purely local nature of its activities, nevertheless, it was conceived that a federal remedy could be devised to punish representatives of a state, county or city who refused to lend their official aid in protecting the invasion of private rights preserved by the 14th Amendment. All this is plainly apparent from reading the exhaustive opinion of Justice Douglas in Monroe v. Pape, 365 U.S. 167, 81 S. Ct. 473, 5 L.Ed.2d 492 (1961).

A purpose of the Act, then, was:

"To afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies." 365 U.S. at 180, 81 S.Ct. at 480.

4. The doctrine of abstention should not be carried to absurd lengths. Thus, where it is crystal clear that a state statute is discriminatory in character, a federal court should not first require construction by a state supreme court. For example, see Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962) and Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962).

5. "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." U. S. v. Classic, supra.

The purpose of the Act is restricted. It does not purport to afford relief merely because rights guaranteed by the 14th Amendment have been affected. The invasion of civil liberties by private citizens is not the subject of the Act.[6] It is the deprivation of such rights by those acting "under color" of law at which the Act is aimed. As said by Justice Frankfurter in his dissenting opinion in Monroe v. Pape:

"If the question whether due process forbids this kind of police invasion were before us in isolation, the answer would be quick. If, for example, petitioners had sought damages in the state courts of Illinois and if those courts had refused redress on the ground that the official character of the respondents clothed them with civil immunity, we would be faced with the sort of situation to which the language in the Wolf opinion [Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782] was addressed: 'we have no hesitation in saying that were a State affirmatively to sanction such police incursion into privacy it would run counter to the guaranty of the Fourteenth Amendment.' 338 U.S., at 28 [69 S.Ct. at 1361]. If that issue is not reached in this case it is not because the conduct which the record here presents can be condoned. But by bringing their action in a Federal District Court petitioners cannot rest on the Fourteenth Amendment *simpliciter*. They invoke the protection of a specific statute by which Congress restricted federal judicial enforcement of its guarantees to particular enumerated circumstances. They must show not only that their constitutional rights have been infringed, but that they have been infringed 'under color of

(state) statute, ordinance, regulation, custom, or usage,' as that phrase is used in the relevant congressional enactment." 365 U.S. at 211, 81 S.Ct. at 496.

Despite the widely accepted definition of "under color" elsewhere quoted from the Classic case, it is only from the facts of the cases themselves that the true character of the class of persons envisioned by the language emerges in clear perspective.

In Screws v. U. S., 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), a sheriff arrested a Negro and killed him with a blackjack. There it was said:

"He who acts under 'color' of law may be a *federal officer* or a *state officer.*" (Emphasis supplied). 325 U.S. at 108, 65 S.Ct. at 1038.

In U. S. v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941), the Court held that voters in a primary election were denied the equal protection of the laws by state officers (election commissioners) who allegedly altered and falsely counted certain votes.

In Monroe v. Pape, supra, police officers invaded a Negro's home at night, arrested him, searched him and submitted him to other indignities without a warrant. It was there said:

"There can be no doubt at least since Ex parte Virginia, 100 U.S. 339, 346–347 [25 L.Ed. 676], that Congress has the power to enforce provisions of the Fourteenth Amendment against *those who carry a badge of authority of a State and represent it in some capacity,* whether they act in accordance with their authority or misuse it." (Emphasis supplied). 365 U.S. at 171–172, 81 S.Ct. at 475.

Williams v. United States, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951), was another case of police brutality in

---

6. "It is clear, as it always has been since the Civil Rights Cases, supra, that 'Individual invasion of individual rights is not the subject-matter of the amendment,' * * * and that private conduct abridg-

ing individual rights does no violence to the Equal Protection Clause * * *." Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 6 L.Ed. 2d 45 (1961).

which a private detective holding a special police officer's card, accompanied by a regular policeman, assaulted a Negro.

A number of lower federal Courts have considered the question of "under color" of law. See Valle v. Stengel, 176 F.2d 697 (3rd Cir. 1949) (Chief of Police barred Negroes from an amusement park swimming pool); Baldwin v. Morgan, 251 F.2d 780 (5th Cir. 1958) (Alabama Public Service Commission and City of Birmingham enforced compulsory race segregation in railroad terminal); Watkins v. Oaklawn Jockey Club, 183 F.2d 440, 443 (8th Cir. 1950) (Plaintiff ejected from race track by two guards, the noteworthy point being that the guards were also police officers.) The Court stated, however:

> "[The officers] in ejecting plaintiff from the racetrack were not performing any duty imposed upon them by the state of Arkansas. Screws v. United States, supra, 325 U.S. at pages 107–108, 65 S.Ct. 1031. Neither is there any evidence indicating that defendant officers made any 'pretense' that they were acting under state law. They were paid for their services by the Jockey Club and not by the state. They were acting, therefore, only 'in the ambit of their personal pursuits.'"

In Perkins v. Edmund Rich, et al., U.S. D.C.Del., 1962, 204 F.Supp. 98 an action under the Act was dismissed, among other reasons, because the Court found that the police captain in making the arrest was acting in his capacity as a private citizen.

In Picking v. Pennsylvania R. Co., 151 F.2d 240, 249 (3rd Cir. 1945), the Third Circuit Court of Appeals said this:

> "As we read [42 U.S.C.A. § 1983] in the light of the Screws decision we are compelled to the conclusion that Congress gave a right of action sounding in tort to every individual whose federal rights were trespassed upon *by any officer acting under pretense of state law.*" (Emphasis supplied).

It will be noted that in each of the cited cases where plaintiff was successful in prosecuting a suit under the Civil Rights Act the wrongdoer was a state, county or municipal officer (policeman, voting commissioner, sheriff). Williams v. Howard Johnson's Restaurant, 268 F. 2d 845 (4th Cir. 1959) is a somewhat similar case. There also a Negro was excluded from a restaurant but the 4th Circuit Court of Appeals, in denying recovery under the Civil Rights Act, said this:

> "The plaintiff concedes that no statute of Virginia requires the exclusion of Negroes from public restaurants and hence it would seem that he does not rely upon the provisions of the Fourteenth Amendment which prohibit the states from making or enforcing any *law* abridging the privileges and immunities of citizens of the United States or denying to any person the equal protection of the law. He points, however, to statutes of the state which require the segregation of the races in the facilities furnished by carriers and by persons engaged in the operation of places of public assemblage; he emphasizes the long established local custom of excluding Negroes from public restaurants and he contends that the acquiescence of the state in these practices amounts to discriminatory state action which falls within the condemnation of the Constitution. The essence of the argument is that the state licenses restaurants to serve the public and thereby is burdened with the positive duty to prohibit unjust discrimination in the use and enjoyment of the facilities.

> "This argument fails to observe the important distinction between activities that are *required by the state* and those which are *carried out by voluntary choice* and without compulsion by the people of the state in accordance with their own desires and social practices. Unless these actions are performed *in obedience*

*to some positive provision of state law* they do not furnish a basis for the pending complaint. \* \* \* " (Emphasis supplied).

In only one case of all those examined does it appear, and then only by inference, that a private citizen, such as a restaurant owner, was acting "under color" of law in discriminating against a Negro. In the very recent case of Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962), the Supreme Court had this situation. The City of Memphis leased a municipal airport restaurant to Dobbs Houses, Inc., which refused to serve a Negro who sought an injunction under the Civil Rights Act which was denied by the United States District Court. A regulation promulgated by authority of a Tennessee statute directed that Negroes be segregated from whites in dining rooms. The lease between the City and Dobbs provided, inter alia, that Dobbs must comply with all state laws. Dobbs pleaded these facts and also the Tennessee common law that a restaurant owner could exclude anyone for whatever reason. The Supreme Court, nevertheless, reversed the federal District Court in Tennessee and directed that it issue an injunction against Dobbs. Turner differs from the case at bar in important respects. There is no lease here from a municipality and thus, no prima facie, "state action" as in Turner, and as in Burton. There is no State regulation here requiring segregation of whites and Negroes in dining rooms. The Delaware Section 1501 is permissive in character while the Tennessee law in the Turner case affirmatively requires segregation of races in dining rooms.

It may, of course, be argued that the Supreme Court, by inference, was holding that Dobbs, even though a private corporation, was acting "under color" of law. The most likely explanation, however, is that, in the minds of the Supreme Court Justices, the presence of the lease supplied not only state action (as in the Burton case) [7] but also the presence of "color of law" because the lease commanded the restaurant owner to obey a state law unqualifiedly requiring segregation of races, with the result that the proprietor was, in a sense, clothed with authority of statute to enforce the discriminatory law. On the other hand, the question may not have been raised and the point overlooked. It seems inconceivable that such an important question was intended to have been disposed of sub silentio.

No matter what construction may be put on 24 Delaware Code Section 1501, it is reasonably fair to say that a restaurant owner such as these defendants who acts without a lease, or any other connection with a state agency, does not carry a "badge of authority of a state" and does not "represent it in some capacity." Monroe v. Pape, 365 U.S. 167, 176, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). True, the words "under color" of law in 42 U.S.C.A. § 1983 and 28 U.S.C.A. § 1343(3) could be construed very broadly. But preservation of the balance between federal and state courts in our federal system, makes it important that language in jurisdictional statutes not be expanded by Court construction beyond the bounds intended by Congress. A review of legislative history and Supreme Court decisions convinces me that defendant did not, within the meaning of these statutes, act "under color" of law when he refused service to plaintiff.

Should this conclusion be in error, then the plaintiff will be required to seek a construction of Section 1501 by the Delaware Supreme Court.

Motion to dismiss granted.

7. The cause of action in Burton was not founded upon the Civil Rights Act.