George W. CAMPBELL, Plaintiff,

v.

GLENWOOD HILLS HOSPITAL, INC., a corporation, and Raymond T. Rascop and George C. Dorsey, individuals, Defendants.

No. 4-63-Civ-320.

United States District Court
D. Minnesota,
Fourth Division.

Dec. 11, 1963.

George M. Stephenson, Minneapolis, Minn., for plaintiff.

Roderick D. Blanchard and O. C. Adamson, II, Meagher, Geer, Markham & Anderson, Minneapolis, Minn., for defendants.

DEVITT, Chief Judge.

In this action for damages under the Civil Rights Act, defendants move to

dismiss claiming that the court lacks jurisdiction over the subject matter, that the complaint fails to state a claim upon which relief can be granted, and that the same cause of action between the same plaintiff and defendants, except George C. Dorsey, is pending in the state courts.

The plaintiff was involuntarily confined in the Glenwood Hills Hospital by order of the Probate Court of Hennepin County, Minnesota, pursuant to a petition alleging the mental illness of the plaintiff. This action is brought against the hospital, the superintendent of the hospital, Raymond T. Rascop, and an attending physician, George C. Dorsey, a member of the staff of the hospital, on the theory that these defendants, acting under color of state law, denied the plaintiff the right to secure counsel, withheld from him notice of the Probate Court hearing, caused him to be falsely imprisoned, subjected him to assault and battery, deprived him of use of the United States mails and wrongfully administered him drugs which deprived him of his mental faculties prior to and during the hearings, and that these acts denied plaintiff access to the courts during his confinement and prevented preparation of a defense for the hearing on his alleged mental illness. It is claimed that these acts (or omissions) made the commitment and detention in the hospital without due process of law and "subjected plaintiff to the deprivation of rights, privileges, and immunities secured to him by the Constitution and laws" of the United States.

There is no allegation that the Minnesota Commitment Statutes are unconstitutional, that the Probate Court lacked jurisdiction over the plaintiff, or that the commitment order signed by the Probate Judge was invalid. And so, for our purposes, it can be presumed that the proceedings prior to the actual commitment were valid and consonant with due process. The alleged acts depriving plaintiff of his civil rights, and the only acts for which damages are sought, occurred in the hospital after the commitment.

## JURISDICTION

It appears that the court has jurisdiction over the subject matter of this cause. The complaint bases jurisdiction on § 1343, Title 28 U.S.C.A., which expressly grants jurisdiction to district courts in civil actions for violation of civil rights. It alleges the action arises under the United States Constitution, and §§ 1983 and 1985, Title 42 U.S.C.A. These sections are part of the Civil Rights Act, and grant a civil cause of action to persons whose civil rights have been violated.

While it is not clear from the decided cases as to the proper ground upon which to base a motion for dismissal under the Civil Rights Act, see Hoffman v. Halden, 268 F.2d 280, 289 (9th Cir.1959); and Whittington v. Johnston, 201 F.2d 810, 812 (5th Cir.), cert. denied, 346 U.S. 867, 74 S.Ct. 103, 98 L.Ed. 377 (1953), it appears to be the better rule for the court to assume jurisdiction and then to consider claimed deficiencies on the ground that the complaint fails to state a claim upon which relief can be granted. This has been the practice in some courts, see Harrison v. Murphy, 205 F.Supp. 449 (D.Del.1962), and is apparently employed by the Court of Appeals for the Eighth Circuit, see Byrd v. Sexton, 277 F.2d 418 (8th Cir. 1960); and Love v. Chandler, 124 F.2d 785 (8th Cir.1942).

## FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

It is now settled that an action under *any* section of the Civil Rights Act must allege acts done under "color of state law." Hoffman v. Halden, 268 F.2d 280, 291 (9th Cir.1959). Section 1983 specifically requires that the act must be done "under color of * * * statute, ordinance, regulations, custom, or usage, * * *" and, even though § 1985 does not expressly contain this requirement, the cases hold that it is a necessary element of a cause of action under this section. This rule was recognized in this Circuit in the case of Love

v. Chandler, supra. The reason for this construction of the Civil Rights Statutes is stated in the Love case at 124 F.2d 786:

> "The statutes, while they granted protection to persons from conspiracies to deprive them of the rights secured by the Constitution and laws of the United States (United States v. Mosley, 238 U.S. 383, 387, 388, 35 S.Ct. 904, 59 L.Ed. 1355), did not have the effect of taking into federal control the protection of private rights against invasion by individuals. Hodges v. United States, 203 U.S. 1, 14–20, 27 S.Ct. 6, 51 L.Ed. 65; Logan v. United States, 144 U.S. 263, 282–293, 12 S.Ct. 617, 36 L.Ed. 429."

Thus to sustain the action in this case under § 1983 or § 1985, it is necessary to determine whether the alleged acts were done under "color of state law."

Glenwood Hills Hospital is a private hospital incorporated under the laws of Minnesota, and the doctor and superintendent are private citizens employed on the staff of this hospital. It is not alleged that the hospital or the individual defendants are state employees, or are made agents of the state by virtue of the Probate Court commitment of the plaintiff. It is alleged, however, that by confining and detaining the plaintiff pursuant to the authority contained in the court order, the defendants "purported to act * * * under color of the statutes, ordinances, regulations, customs or usages of the State of Minnesota." Consequently we have the interesting question of whether a private hospital, its superintendent or a doctor on the staff, are acting under color of state law when they accept commitment of and perform treatment on an alleged mentally ill patient pursuant to an order issuing out of a state court.

■ Before there can be a finding that an act is done under color of state law, the leading decisions intimate that "color of law" requires a vesting of actual authority of some kind. Williams

v. Hot Shoppes, Inc., 110 U.S.App.D.C. 358, 293 F.2d 835 (1961), cert. denied, 370 U.S. 925, 82 S.Ct. 1562, 8 L.Ed.2d 505, reh. denied, 371 U.S. 854, 83 S.Ct. 16, 9 L.Ed.2d 91 (1962). This conclusion is supported in United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941), where the Court said that:

> "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." (At 313 U.S. 326, 61 S.Ct. 1043, 85 L.Ed. 1368).

This ruling has been affirmed in numerous cases, the most recent being Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) which dealt with application of § 1983.

So the power which is allegedly misused must be derived from some actual vesting of authority by the state. In the instant case it is clear that the superintendent of the hospital received the plaintiff for "involuntary confinement" in accordance with the commitment order of the state court. This order vested in the defendants the power to confine and detain the patient for the purpose of treatment and cure, and imposed the duty to act pursuant to state statutes.

■ In all other relations with the patient it appears that the defendants acted in their private capacities. None of the defendants was in the employ of the state. They were not being paid salaries or fees, or otherwise reimbursed by the state, and in fact the patient himself is obligated under the statutes to pay for all hospital costs when committed to a private institution. It is not alleged that the defendants became agents or officers of the state. The patient was under the control of the defendants, and not under control of the State Welfare Commissioner as are some other patients committed to state institutions under his jurisdiction. M.S.A. § 525.762(1). The defendants were not answerable to the Commissioner, but under the statutes

had the duty to submit medical reports to the committing court, and otherwise keep the court informed as to the status of the patient. Considering this relationship and the limited purpose of the court order under which the defendants were acting, it logically follows that the actions of these defendants did not comprise a misuse of power derived from an actual vesting of authority by the state. After the commitment these defendants acted in their private capacities, and their actions were not "under color of" state law in the sense required by the Civil Rights Act.

The plaintiff has not cited any case, nor has the Court been able to find one, holding or even intimating that the officers of a private hospital or a doctor are acting under color of state law in these circumstances. The closest case in point is Hoffman v. Halden, 268 F.2d 280 (9th Cir.1959) where the court said that a private doctor can be held liable as a member of a civil conspiracy, but the court refrained from ruling whether or not he was acting under color of state law. The court sustained the civil conspiracy charge against the doctor only on the basis that the other members of the alleged conspiracy were state officers. This is clearly not the case here where each of the defendants is admittedly a private corporation or citizen. A further distinguishing feature is the fact that in the Hoffman case the doctor was specifically named in the order. The doctor here was not included in the order.

The case of Harrison v. Murphy, 205 F.Supp. 449 (D.Del.1962), in holding that owners of a restaurant were not acting "under color" of law in refusing service to a Negro, noted at 205 F.Supp. 453 that "it is only from the facts of the cases themselves that the true character of the class of persons envisioned by the language (under color of law) emerges in clear perspective." The court cited Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) where the Supreme Court stated that:

"He who acts under 'color' of law may be a *federal officer* or a *state officer*." (Emphasis added) (At 325 U.S. 108, 65 S.Ct. 1038, 89 L.Ed. 1495).

Monroe v. Pape, supra, reaffirmed this emphasis on state derived authority:

"There can be no doubt at least since Ex Parte [Commonwealth of] Virginia, 100 U.S. 339, 346–347, [25 L. Ed. 676,] that Congress has the power to enforce provisions of the Fourteenth Amendment *against those who carry a badge of authority of a State and represent it in some capacity*, whether they act in accordance with their authority or misuse it." (Emphasis added) (365 U.S. 171–172, 81 S.Ct. 475, 5 L.Ed.2d 492).

The main purpose of the Civil Rights Act as succinctly stated in the opinion of Justice Douglas in Monroe v. Pape is:

"[T]o afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the *state* agencies." (At 365 U.S. 180, 81 S.Ct. 480, 5 L.Ed.2d 492) (Emphasis added).

In view of this stated purpose of the Civil Rights Act, the restrictive interpretation which has been placed on it, Byrd v. Sexton, 277 F.2d 418 (8th Cir.1960), and other cases holding that actions by a private doctor or citizen do not come within the purview of these acts, Williams v. Hot Shoppes, Inc., supra; Spampinato v. M. Breger & Co., 270 F.2d 46 (2d Cir.1959), cert. denied, 361 U.S. 944, 80 S.Ct. 409, 4 L.Ed.2d 363, reh. denied, 361 U.S. 973, 80 S.Ct. 597, 4 L. Ed.2d 553 (1960); Watkins v. Oaklawn Jockey Club, 183 F.2d 440 (8th Cir. 1950), it appears clear that there was no vesting of authority by the state in the sense required by the Civil Rights Act, and that under these facts the defendants were not acting under color of state law and hence no cause of action is stated.

■ As a practical matter, however, even assuming arguendo that the defendants were acting under color of state law, the complaint is still deficient. The Supreme Court in Monroe v. Pape held that "Section 1979 (§ 1983, Title 42 U.S.C.A.) should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." (At 365 U.S. 187, 81 S.Ct. 484, 5 L.Ed.2d 492). An essential element in tort liability is the breach of a legal duty owed by the wrongdoer to the injured party. Consequently, to recover under these statutes it is implicit that the alleged deprivation of civil rights must result from a breach of duty owed by the wrongdoer, *and* the duty must be one possessed by virtue of state law.

■■ The duty to secure counsel and the duty to give notice of a hearing to the patient are clearly imposed upon the Probate Court under Minnesota law. While there is no doubt that a deprivation of these rights constitutes a deprivation of due process, Hussman v. Hursh, 253 Minn. 578, 92 N.W.2d 673 (1958), an attempt to impose upon these defendants the responsibility of an alleged breach of these duties is frivolous. The other alleged acts appear to be in violation of private rights, and, even assuming infringement, do not constitute deprivation of rights cognizable under the Civil Rights Act. Spampinato v. M. Breger & Co., supra.

■ The superintendent and doctors working in a hospital, whether it is a private institution or a state hospital, should not be held responsible to determine the validity of a court order of commitment where, on its face, the order appears to be valid. Kenney v. Fox, 232 F.2d 288 (6th Cir.), cert. denied, 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66 (1956). Where they fully comply with the order of commitment (and there is no allegation in this case that they have not) there is immunity from responsibility for the ensuing confinement. See Hoffman v. Halden, 268 F.2d 280, 300 (9th Cir.1959). See also, in this connection, Duzynski v. Nosal, 324 F.2d 924. (7th Cir. 1963).

■■ It should be noted further that the alleged deprivation of equal protection of the laws, or of equal privileges and immunities under §§ 1983 and 1985 are not supported by sufficiently alleged material facts to show that the defendants (1) conspired or acted jointly or in concert, or (2) conspired with the purpose of *impeding* justice with the intent to deny plaintiff the equal protection of the law (1985(2)), or (3) conspired to *deprive* the plaintiff of the equal protection of the law or equal privileges and immunities under the law, (§§ 1983, 1985 (3). These elements are essential to a cause of action for a civil conspiracy under these sections. Hoffman v. Halden, 268 F.2d 280 (9th Cir.1959). It is not enough to state bare conclusionary allegations that the defendants jointly conspired to deprive the plaintiff of these rights secured by the Constitution, without support in facts alleged. Dunn v. Gazzola, 216 F.2d 709 (1st Cir.1954).

■ As noted, it is not every private right which is protected by the Constitution. If there was in fact a false imprisonment or assault and battery, redress for these private wrongs is in the exclusive province of the state. Spampinato v. M. Breger & Co., supra; Love v. Chandler, supra.

For the foregoing reasons the motion to dismiss is granted. The plaintiff may have a cause of action in the state court. He doesn't have one here.