Ronica R. WEIGAND, Appellant,

v.

AFTON VIEW APARTMENTS et al.,
Appellees.

No. 72–1340.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 9, 1973.

Decided Feb. 15, 1973.

Reed C. Richards, St. Paul, Minn., for appellant.

Marvin G. Lind, Shear & Rooney, Ltd., St. Paul, Minn., for appellees.

Before MATTHES, Chief Judge, BRIGHT, Circuit Judge, and TALBOT SMITH,* Senior District Judge.

BRIGHT, Circuit Judge.

Ronica R. Weigand occupies an apartment in a low-income housing complex funded under § 236 of the National Housing Act.[1] Weigand's landlord gave her notice to vacate the apartment upon expiration of her ensuing monthly lease, and thereafter brought an action for her eviction in a Minnesota court. Weigand commenced this civil rights action to enjoin further proceedings by her landlord and for other relief in federal court, contending that she could not be summarily evicted without good cause shown and a hearing thereon. Jurisdiction was invoked under 28 U.S.C. § 1331 and under 28 U.S.C. § 1343(3) pursuant to a cause of action authorized under 42 U.S.C. § 1983. The district court, Chief Judge Devitt, dismissed the action for want of subject matter jurisdiction.

Thereafter, Weigand sought to amend her complaint to claim that the landlord, as an agent of the federal government, had deprived her of constitutional rights, thus giving rise to suit in federal court as a federal question under 28 U.S.C. § 1331 or as a civil action arising under an Act of Congress regulating commerce under 28 U.S.C. § 1337. Weigand also sought to join George Romney, as Secretary of the Department of Housing and Urban Development, and area and local HUD officials as defendants, thereby stating a further basis for federal jurisdiction as a civil suit against the United States under 28 U.S.C. § 1346 or as an action for mandamus against a federal officer under 28 U.S.C. § 1361. The district court denied these subsequent motions and Weigand has appealed from the court's dismissal of her action. We affirm.

Preliminarily, we examine appellant's assertion that "state action" in this case justifies a federal cause of action under 42 U.S.C. § 1983. Weigand contends that the act of the landlord in ordering her to vacate without notice of cause and a hearing amounted to state action depriving her of a constitutional right to procedural due process under the Fifth and Fourteenth Amendments. She alleges that the state became a participant with the landlord in the operation of the housing complex here in

---

* Eastern District of Michigan, sitting by designation.

1. 12 U.S.C.A. § 1715z–1 (Supp.1972), amending 12 U.S.C.A. § 1715z–1 (1969).

question by affording the landlord a 50 percent "tax break" on his real property pursuant to provisions of Minnesota law, Minn.Stat.Ann. § 273.13 Subd. 17 (Supp.1973).[2] The district court held that this factor alone was insufficient to establish any basis for a federal cause of action. Under the circumstances shown here, we agree.

A right to adequate housing is receiving increasing recognition in this Country. *See* Michelman, The Advent of a Right to Housing: A Current Appraisal, 5 Harv.Civ.Rights-Civ.Lib.L.Rev. 207 (1970). This recognition has been extended in cases where tenants have invoked federal jurisdiction under the Civil Rights Act[3] to challenge threats of summary eviction upon termination of short-term leases. *See* McGuane v. Chenango Court, Inc., 431 F.2d 1189, 1190 (2nd Cir. 1970), cert. denied, 401 U.S. 994, 91 S.Ct. 1238, 28 L.Ed.2d 532 (1971); McClellan v. University Heights, Inc., 338 F.Supp. 374, 382–383 (D.R.I.1972); McQueen v. Druker, 317 F.Supp. 1122, 1129–1131 (D.Mass.1970), aff'd in part, 438 F.2d 781, 785–786 (1st Cir. 1971).

The jurisdictional success of the federal cause of action in such cases, however, is dependent upon more than a demonstrated infringement of protected rights. It has necessitated, as well, some showing of state involvement sufficient to satisfy the statutory requirement that the infringement has been perpetrated "under color of [a] statute, ordinance, regulation, custom, or usage, of [a] State or Territory," sufficient to make it the state's own. The statute requires *state* action. *See* Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 172, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); Burton v. Wilmington Parking Authority, 365 U.S. 715, 721, 81 S.Ct. 856, 6 L.Ed. 2d 45 (1961); Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).

The degree of state involvement in private conduct required to constitute state action has been an elusive standard. *See Moose Lodge, supra,* 407 U.S. at 172, 92 S.Ct. 1965; Reitman v. Mulkey, 387 U.S. 369, 380, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967). Even though a state does not itself engage in racial discrimination, it may transform discrimination by private enterprise into state action by becoming a symbiotic partner with such enterprise. Thus, state action was held to have occurred in *Burton, supra,* 365 U.S. 715, 81 S.Ct. 856, where the state granted a private restauranteur exclusive authority to operate his restaurant in a publicly owned and operated parking facility, and the proprietor refused service to Negroes. *See Moose Lodge, supra,* 407 U.S. at 175–177, 92 S. Ct. 1965. This has not meant, however, that every degree of state support or regulation underlying private discrimination constitutes state action.

> Since state-furnished services include such necessities of life as electricity, water, and police and fire protection, such a holding would utterly emasculate the distinction between private as distinguished from state conduct * * *. [*Moose Lodge, supra,* 407 U.S. at 173, 92 S.Ct. at 1971]

Thus, the difficult but essential question of degree pervading "state action" cases must turn upon a careful analysis of the facts in a given case. *Moose Lodge, supra,* 407 U.S. at 172, 92 S.Ct. 1965; *Burton, supra,* 365 U.S. at 722, 81 S.Ct. 856.

We know of no case that would extend the state action concept to a federally financed but privately owned and operated apartment house merely because a state assesses real estate taxes

2. The statute directs that federally financed structures used for housing the elderly or families of low or moderate income under Title II of the National Housing Act shall fall into a separate tax classification allowing an assessment for real estate tax purposes of 20 percent of their market value, rather than the 40 percent of market value assessed similar structures which do not qualify for the special classification.

3. 42 U.S.C. § 1983; 28 U.S.C. § 1343.

on this property at a lower rate than that assessed equivalent structures not similarly funded.

In successful cases challenging summary evictions by private landlords where tax exemption has been alleged as state action, the facts have always disclosed substantial additional state involvement. In *McQueen, supra,* 317 F. Supp. at 1124–1125, 1130, and *McClellan, supra,* 338 F.Supp. at 381, the two cases cited by appellant most nearly on point, the facts disclosed that the housing projects in question were subject to continuous regulation. *See also* Male v. Crossroads Associates, 469 F.2d 616, 621 (2nd Cir. 1972). Such regulation has not been shown to have been present here.

■ Neither do we find that Lavoie v. Bigwood, 457 F.2d 7 (1st Cir. 1972), cited by appellant, supports her contention that utilization of eviction proceedings authorized by Minnesota's forcible detainer procedures, Minn.Stat.Ann. Ch. 566 (1947), affords a basis for a § 1983 suit grounded on state action. The way in which the *Lavoie* court framed the issue before it suggests why that case is distinguishable from the one at bar. The court said:

> The critical issue [is] whether the *confluence* of court-ordered eviction *and* monopoly power created by zoning sufficiently implicates the state to be termed state action * * *. [*Id.* at 10 (emphasis added).]

Since state forcible detainer laws, in most instances, are applied neutrally on behalf of all landlords, they will not alone arise to a level of state action absent a showing that a state in applying its law is "privy to [a private party's] discriminatory purpose." *Lavoie, supra,* 457 F.2d at 11. *See* Griffin v. Maryland, 378 U.S. 130, 84 S.Ct. 1770, 12 L. Ed.2d 754 (1964) (state arrest and prosecution of blacks for using a privately owned amusement park open to the public); *Shelley, supra,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (state court enforcement of a racially restrictive covenant).

Moreover, the significant entwinement between state regulations and a privately owned public utility's operations which was held to be sufficient state action to justify federal jurisdiction in Ihrke v. Northern States Power Co., 459 F.2d 566, 568–569 (8th Cir.), vacated for mootness, 409 U.S. 815, 93 S.Ct. 66, 34 L.Ed.2d 72 (1972), does not appear here. Accordingly, we hold that the facts stated in Weigand's complaint do not fall within the perimeters of "state action" as required for assertion of a federal civil rights claim under § 1983.

■ Anticipating an adverse ruling on her state action theory, appellant presses the proposed amendments to her complaint in order to save federal jurisdiction. In considering these proposed amendments, we note the changing posture of this controversy. The landlord's affidavit filed in district court indicates that he has abandoned efforts to evict the tenant. That affidavit recites in part:

> That since the spring of this year [1971] Mrs. Weigand has remained in said premises and has been a reasonably suitable tenant, and affiant has instructed the rental agency not to evict her except for cause and the defendants have no present intention to evict the plaintiff.

While this statement does not necessarily moot the controversy, *cf. Ihrke, supra,* 459 F.2d 566, *vacated for mootness,* 409 U.S. 815, 93 S.Ct. 66, 34 L.Ed.2d 72, the changed circumstances therein bear upon the propriety of the district court's discretionary denial of the motion to amend. It appears quite clearly that Weigand cannot now make out a claim under 28 U.S.C. § 1331 seeking the requisite damages in excess of $10,000, since no eviction has occurred or is presently threatened.

■ We turn to appellant's argument which seeks to bottom jurisdiction on 28 U.S.C. § 1337, as an action arising under an Act of Congress regulating com-

549

merce, specifically, provisions of the National Housing Act, 12 U.S.C. § 1701 et seq. Even assuming, arguendo, the validity of the contention that this Act regulates commerce within the meaning of § 1337, appellant does not plead any substantive provision of that Act in conjunction with facts of this case which would authorize her action, Peyton v. Ry. Express Agency, Inc., 316 U.S. 350, 353, 62 S.Ct. 1171, 86 L.Ed. 1525 (1942); Springfield Television, Inc. v. City of Springfield, Mo., 428 F.2d 1375, 1378 (8th Cir. 1970); Eickhof Construction Co. v. Great Northern Ry. Co., 291 F.Supp. 44, 48 (D.Minn.1968).

Finally, appellant's effort to join HUD officials in the lawsuit injects a jurisdictional theory entirely new to the case resting upon federal action in prescribing contractual provisions permitting lease termination without protecting the tenant from summary eviction. Judge Devitt, in rejecting the proffered amendments to the complaint in the district court, noted that:

> What plaintiff seeks to do by this motion is transform a lawsuit over which the court does not have subject matter jurisdiction into an entirely new suit against government officials and based upon jurisdictional statutes which pertain solely and directly to these officials.

Rule 15(a), Fed.R.Civ.P., providing that a federal district court freely give leave to amend pleadings as justice requires, is addressed to the discretion of the district court. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed. 2d 222 (1962). Here, in light of all the circumstances, the district court did not abuse its discretion in disallowing the proposed amendments designed to add parties and change plaintiff's theories of federal jurisdiction where only an abstract question would have remained for decision, rather than a present concrete controversy between the tenant and her landlord.

Affirmed.