Robert P. ELLINGSON and Gaylon A. French, for themselves and all others similarly situated, Plaintiffs,

v.

SEARS, ROEBUCK & COMPANY, a corporation, Defendant.

Gale E. FISHER, for himself and all others similarly situated, Plaintiff,

v.

SEARS, ROEBUCK & COMPANY, a corporation, Defendant.

Civ. Nos. 72–4078, 72–4079.

United States District Court, D. South Dakota, S. D.

Sept. 20, 1973.

Gale E. Fisher of May, Johnson & Burke, Sioux Falls, S. D., and George A. Bangs of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, S. D., for plaintiffs.

Gary J. Pashby of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, S. D., for defendant.

## MEMORANDUM DECISION AND ORDER

NICHOL, Chief Judge.

In June of 1969, Robert P. Ellingson commenced an action in the Circuit Court of Minnehaha County, South Dakota, against Sears, Roebuck & Company, claiming that the service charge of 18% per year as set forth in the revolving charge account agreements between Ellingson and Sears was usurious. In January, 1970, plaintiff Ellingson moved for an order declaring the action be deemed maintainable as a class action, but on May 5, 1970, the Circuit Court entered an order denying said motion. No appeal was taken from this order. On November 10, 1970, Gaylon A. French was granted leave to intervene as a party plaintiff. Ellingson and French were asking damages in the amount of $1.60 and $221.35, respectively (being the amounts of service charges each had paid and was claiming as being owed him), and on February 15, 1971, defendant Sears deposited into the Registry of the Circuit Court two checks in those amounts made payable to the plaintiffs.

On December 15, 1971, in the case of Rollinger v. J. C. Penney, 192 N.W.2d 699 (1971), the South Dakota Supreme Court held that revolving charge accounts came under the state usury statutes (SDCL 54-3-7 and 54-3-12) and were therefore subject to a 10% maximum interest rate. The decision was held to apply prospectively only, except for Rollinger, who, the court felt, "should be rewarded for giving this court the opportunity to render a decision on an important question involved in what is a prevailing business practice." *Rollinger, supra,* at 705. Subsequently, in the Circuit Court case of Ellingson and French v. Sears, summary judgment was granted for the defendant on March 23, 1972, the court there stating that "the issues involved in this case are essentially identical as (sic) those in the case of Rollinger v. J. C. Penney Company", and that the *Rollinger* decision "precludes the recovery of any alleged damages herein retroactively." It was further ordered that the checks in the Court Registry made payable to Ellingson and French be transmitted to plaintiffs' counsel for plaintiffs' benefit. The evidence shows that the $221.35 check to Gaylon A. French was subsequently cashed by him. No appeal was ever taken from the Circuit Court decision.

Plaintiffs Ellingson and French commenced this action in federal court in September of 1972, claiming that they and all other members of the class which they represent were deprived of their constitutional right to equal protection of the laws by the action of the South Dakota Supreme Court in granting the protection of the usury statutes of South Dakota to one Stanley Rollinger while denying to plaintiffs and other members of the class the protection of such statutes.

On May 8, 1972, Gale E. Fisher also commenced a class action against defendant Sears in the Circuit Court of Minnehaha County, South Dakota, mak-

ing similar claims to those involved in the suit of Ellingson and French, the only difference being that Fisher had not yet paid Sears the service charge of $27.87 assessed against him and which he claimed was usurious. On June 19, 1972, Sears filed a counterclaim (withdrawn by Sears after judgment) for the $27.87 in Circuit Court. On August 2, 1972, the Circuit Court granted defendant's motion for summary judgment and entered an order dismissing plaintiff's complaint upon its merits for the same reasons and upon the same grounds as in the Ellingson and French suit, namely, that the *Rollinger* case had decided the issues involved. The Court found

> the Defendant did reduce its service charge for Gale E. Fisher on his account and for all other customers with similar accounts in the State of South Dakota to ten percent (10%) per annum . . . from and after December 15, 1971, and the mandate of the Supreme Court has, therefore, been fully complied with by the Defendant, and . . . that neither Gale E. Fisher nor any other customer of the Defendant with a similar account in the State of South Dakota has been denied equal protection of the law under the Constitution of the United States.

The above decision is presently on appeal to the Supreme Court of South Dakota.

In September of 1972, Fisher commenced this action in federal court, originally making the same claim as Ellingson and French in their federal case (see above) but later amending his complaint to further allege

> that the Defendant, acting under color of state law, custom or useage (sic), has deprived Plaintiff and all others similarly situated of their rights secured by the Constitution, by granting to Robert P. Ellingson and Gaylon A. French the benefits and protection of SDCL 54–3–12, while denying the equal benefit and protection of said laws to plaintiff and all others simi-

larly situated; that said conduct and deprivation of equal protection by Defendant is an intentional or purposeful discrimination against this Plaintiff and all others similarly situated.

While there are several intriguing legal issues presented by both sides, including whether the abstention doctrine should be applied, whether res judicata is applicable, and whether a class action is defeated by paying named plaintiffs, they all become academic upon this Court's determination that this is not a proper 42 U.S.C. Sec. 1983 civil rights action.

Mr. Fisher claims that the fact that Sears continued to send him statements after December 15, 1971 (the date of the *Rollinger* decision), for service charges accrued and assessed prior to that date at an 18% per annum interest, constituted a "use" of revolving charge account agreements in violation of the usury statute and contrary to the mandate of the *Rollinger* decision. Viewing this question in a light most favorable to plaintiff Fisher, as required in summary judgment proceedings, Adickes v. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); United States v. Farmers Mut. Ins. Ass'n of Kiron, Iowa, 288 F.2d 560, 562 (8th Cir. 1961), we shall assume that defendant's actions did constitute a "use" as contemplated by the South Dakota Supreme Court in *Rollinger* and therefore was a refusal by defendant to follow the mandate of the South Dakota Supreme Court. Notwithstanding this assumption, plaintiff Fisher's claim is not cognizable under 42 U.S.C. Sec. 1983, as there was no state action involved with defendant's alleged improper "use" of the revolving charge account agreements.

■■ If, as plaintiff claims, the defendant was *not* following the Supreme Court mandate, then surely they cannot claim that the Supreme Court was supporting such action. If, on the other hand, the prospective application of *Rollinger* meant that Sears *was* acting un-

der the *Rollinger* mandate by continuing to send out statements for charges accrued *prior* to the *Rollinger* decision, Sears cannot be said to be acting under color of state law, custom or usage simply because it is following a state court decision of law.

In Campbell v. Glenwood Hills Hospital, Inc., 224 F.Supp. 27 (1963), the District Court of Minnesota stated,

> The superintendent and doctors working in a hospital, whether it is a private institution or a state hospital, should not be held responsible to determine the validity of a court order of commitment where, on its face, the order appears to be valid. *Campbell, supra,* at 32.

In the cases at hand, defendant Sears cannot be expected to determine the validity of the *Rollinger* decision which provided for prospective application only.

■ While it may be true, as stated in plaintiff Fisher's brief opposing summary judgment, that defendant has imposed service charges "through custom and usage of its revolving charge agreement", "a 'custom or usage' for purposes of § 1983 requires state involvement and is not simply a practice that reflects longstanding social habits, generally observed by the people in a locality." Adickes v. Kress, *supra,* 398 U.S. at 166–167, 90 S.Ct. at 1613. The Court in *Adickes* went on to say, "we think it clear that a 'custom, or usage of (a) state' for purposes of Sec. 1983 must have the force of law by virtue of the persistent practices of state officials." Adickes v. Kress, *supra,* at 167, 90 S.Ct. at 1613.

*Adickes* involved the arrest on vagrancy charges of a white school teacher after she was refused service in a restaurant because she was accompanied by six Negro students. The Court stated that " . . . the relevant inquiry is whether at the time of the episode in question there was a long-standing and *still prevailing state-enforced* custom of segregating the races in public eating places" (emphasis added). *Adickes,*

*supra,* 90 S.Ct. at 1616. In the present cases, it has been affirmatively shown by exhibit (monthly statements sent out by Sears) and affidavit (statement by Sears' territorial credit manager) that the custom of charging over 10% interest on revolving charge accounts is not still prevailing. On the contrary, the *Rollinger* decision positively ended such custom and, as previously stated, following a court decision cannot be interpreted as enlisting state involvement.

■ Ellingson and French in their complaint against Sears state that they and others have been denied equal protection of the laws by the action of the South Dakota Supreme Court in granting the protection of the usury statutes of South Dakota to one Stanley Rollinger while denying to plaintiffs and other members of the class the protection of such statutes. In other words, Ellingson and French are complaining about the prospective application of the *Rollinger* decision, but that decision cannot be altered by a civil rights action against Sears as a private corporation. The claim against Sears provides no basis for the jurisdiction of this Court under 42 U.S.C. Sec. 1983.

■ The District Court in Lucas v. Wisconsin Electric Power Company, 322 F.Supp. 337 (Wisc.1970), a suit challenging the constitutionality under Sec. 1983 of certain power company regulations, stated:

> Statutes providing civil action for deprivation of rights and conferring jurisdiction over such action upon federal courts were directed to redress the deprivation of rights by actions of the state and do not confer jurisdiction over causes of action based on alleged invasion of a plaintiff's constitutional rights by private individuals or corporations. *Lucas, supra,* at 337.

The state must become a symbiotic partner with private enterprise in order for a Sec. 1983 action to lie. Weigand v. Afton View Apartments, 473 F.2d 545, 547 (8 Cir. 1973). In *Weigand,* the Eighth Circuit held no such partnership

**1348**

was formed when a federally financed but privately owned and operated apartment house was assessed for real estate taxes at a lower rate than equivalent structures not similarly funded (*Weigand, supra,* at 547–548), and we hold there is no such symbiotic partnership between the state and defendant in these cases merely because a state supreme court decision is made prospective only.

While we may sympathize with plaintiffs' cause, we feel proper relief for their situation lay in applying to the United States Supreme Court for review of the South Dakota Supreme Court's decision in *Rollinger.* Accordingly, we hold that the facts stated in plaintiffs' complaints do not fall within the perimeters of "state action" as required for assertion of a federal civil rights claim under Sec. 1983, and that summary judgment will be granted to the defendant who is entitled to prevail as a matter of law.

It is so ordered.