## STATE EX REL. HENRY HUSSMAN v. MORRIS HURSH AND OTHERS.

92 N. W. (2d) 673.

October 17, 1958—No. 37,679.

*John S. McGrath,* for relator.
*M. J. Daly,* County Attorney, for respondents.

PER CURIAM.

This is an appeal under M. S. A. 589.29 from a final order in habeas corpus proceedings in the District Court of Stearns County.[1]

The district court proceedings were based upon the claim of relator, Henry Hussman, that he is unlawfully held in custody in the Veterans Hospital at St. Cloud under an invalid order of the probate court of Scott County. The latter is challenged on the ground that the probate court did not have jurisdiction; and that it failed to comply with the provisions of § 525.752, subd. 2,[2] as well as the constitutional requirements of due process, before finding relator incompetent and committing him to custody. On August 29, 1958, the District Court of Stearns County made its order dismissing relator's petition and denying the writ of habeas corpus. The present appeal is from this order.

It appears that the proceedings relative to relator's arrest and confinement were as follows:

---

[1] It is established that appeals in habeas corpus proceedings are heard de novo in the supreme court. Guy v. Utecht, 216 Minn. 255, 12 N. W. (2d) 753. It is also established that, where no issues of fact are involved, this court may determine the issue on the basis of the record before the district court. State ex rel. Hansen v. Utecht, 230 Minn. 579, 40 N. W. (2d) 441.

[2] M. S. A. 525.752, subd. 2. "Upon the filing of a petition for the commitment of a person who is alleged to be mentally deficient * * * the court shall fix the time and place for the hearing thereof. Ten days notice thereof shall be given by mail to the commissioner of welfare * * *. Notice shall also be given to such other persons in such manner and at such time as the court directs."

Section 525.751, subd. 1, provides that the petition for commitment of a patient shall set forth *"the name and address of the patient, the name and address of his nearest relatives, * * *."* (Italics supplied.)

(1) Relator was arrested at about 11 a. m. July 28, 1958, by the sheriff of Scott County. He was not served with a warrant at that time. Subsequently, while in custody on an automobile trip to Chaska to employ counsel, the sheriff *showed* him a copy of some document which presumably was a warrant.

(2) No notice of hearing of any kind was served upon relator or upon any of his relatives or friends at that time or at any other time.

(3) Prior to his hearing, he was unable to locate his regular attorney. In some manner an attorney was engaged to represent him. This attorney was not known to relator.

(4) No opportunity was given relator to notify his relatives or friends as to his arrest and custody or to have a guardian ad litem appointed to represent him.

(5) At 1 p. m. July 28, 1958, about 2 hours after his arrest, relator was brought before the probate court of Scott County with the attorney. No relatives or friends of relator were present at this hearing, and no evidence was presented on his behalf. Relator did not seek a continuance because he was not aware that the proceedings would lead to his commitment as an incompetent. The attorney with him at the time subsequently stated that relator "may not have understood the exact ramifications of an adverse decision of the Probate Court."

(6) On July 28, 1958, immediately after a short hearing, the probate court of Scott County made its order committing relator to the Veterans Hospital at St. Cloud, Minnesota. He was taken there the following morning and has since been confined there.

From the foregoing it is clear that within the space of a few hours relator was arrested without service of warrant; brought before the probate court of Scott County without notice of hearing to relatives, friends, or guardian; and, while ignorant of the nature of the proceedings, committed to the Veterans Hospital at St. Cloud. He was then owner of a home and small truck garden upon which he was raising fruits and berries, and no one was appointed to look after his interests therein.

Subsequently, relator engaged counsel who petitioned the District Court of Stearns County for a writ of habeas corpus, claiming that he had been committed without due process. On August 16, 1958, the District Court of Stearns County issued a writ of habeas corpus directing respondents to produce relator before the court in chambers. A hearing on the petition was held August 26, 1958. At this hearing no testimony was submitted other than the record of the probate court of Scott County. Relator's counsel requested a court reporter to make a record of the proceedings but this request was denied. He offered to submit testimony relating to the failure of Scott County officials to comply with the statutory requirements, but no

record thereof was made because of the absence of a court reporter.

On August 29, 1958, as above indicated, the District Court of Stearns County made its order dismissing the petition of relator and denying the writ of habeas corpus. In a memorandum attached thereto, it stated:

"* * * section 525.752 having to do with commitment of mental patients to an institution in cases where the patient is claimed to be insane, provides that the patients shall be examined at such time and place and upon notice to such persons and served in such manner as the Court may determine. (There is no specific length of time provided as far as the notice is concerned.)

"* * * The record discloses that Mr. Hussman was served notice by the sheriff, was apprehended by the sheriff, that he was given an opportunity to have counsel, and that he was represented by the counsel at the hearing.

\* \* \* \* \*

"All of the authorities cited by petitioner * * * have to do with commitments or determination of incompetency and not cases of insanity such as the case now before the court. Some of the more recent cases cited by Counsel disclose the fact that in the opinion of the Court there is a difference in the type of notice that must be served as they provide that in cases of insanity where the patient might be dangerously insane *it wouldn't be practical to give any notice more than that given in this case*." (Italics supplied.)

1. In construing statutes similar to § 525.752, which confers jurisdiction upon the probate court in incompetency proceedings, this court has stated (In re Restoration to Capacity of Masters, 216 Minn. 553, 556, 13 N. W. [2d] 487, 489, 158 A. L. R. 1210):

"Though Minn. St. 1941, § 525.78 * * * requires only such 'notice * * * as the court may direct,' such notice must satisfy the constitutional requirement of 'due process of law.' This prerequisite to a valid commitment cannot be ignored either by the legislature or by a court, proceeding as the legislature prescribes. * * *

\* \* \* \* \*

"* * * no distinction can be made as to the necessity and sufficiency of notice and opportunity to be heard as between normal and abnormal persons."

In In re Wretlind, 225 Minn. 554, 32 N. W. (2d) 161, we held that, in proceedings relative to the incompetency of an infant, constitutional provisions for due process required appointment of a guardian for the infant prior to the proceedings and service of adequate notice upon such guardian with respect thereto, even though there was no statute to such effect. There we stated (225 Minn. 561, 32 N. W. [2d] 166):

"* * * notwithstanding statutory language similar to that set forth in § 525.752, requiring only such notice 'as the court may direct' in incompetency proceedings, before an incompetent infant can be placed in custody adequate notice of the hearing thereon and the purpose of such hearing should be served upon the minor either through the natural guardian, or, where the natural guardian be an adversary party, through a duly appointed guardian or representative named by the court for the purpose of the proceeding."

In Juster Bros. Inc. v. Christgau, 214 Minn. 108, 119, 7 N. W. (2d) 501, 508, it was stated:

"Notice and an opportunity to be heard are universally recognized as essential to due process. A fair hearing is a fundamental requisite."

2. In the present proceedings constitutional due-process requirements as well as statutory provisions were ignored. Relator was arrested, tried, and ordered committed without notice all within the period of less than 4 hours and while he was unaware of the consequences of the proceedings. The least that should have been done was to have set a time for hearing, sufficient to permit reasonable notice thereof, so that relator's relatives or a guardian might have been afforded an opportunity of selecting counsel and representing him in the proceedings. The trial court's conclusion that a different rule may be applied where insanity rather than incompetency is involved appears to be without support. We find no authority for summarily disposing of a matter as serious as that here involved.

The order appealed from is reversed with directions that the court grant the petition for a writ of habeas corpus directing the release of relator from custody.