136 N.W.2d 552 (1965)
Appeal of Lois M. LEARY from Probate Court.
Odessa WALKER, Petitioner, Respondent,
v.
Lois M. LEARY, etc., by Harlan Smith, Special Guardian of her estate, Appellant.
No. 39690.
Supreme Court of Minnesota.
July 23, 1965.
*553 Mandel & Stiegler, Minneapolis, for appellant.
George M. Scott, County Atty., Henry W. McCarr, Jr., and Douglas X. Juneau, Asst. County Attys., Minneapolis, for respondent.
KNUTSON, Chief Justice.
This is an appeal from a judgment of the Hennepin County District Court determining that appellant is mentally ill and committing her to the State Hospital at St. Peter, Minnesota.
*554 The proceeding here for review was preceded by a series of attempts to commit appellant to a state hospital. In March 1956 the probate court of Hennepin County determined that appellant was mentally ill and committed her to the Anoka State Hospital. On January 7, 1958, she was discharged after a determination that she had a sociopathic personality but was not psychotic.
On June 16, 1960, one Edward Lewis, who is referred to in the record as a foster brother of appellant although no blood relative, filed a petition to commit her again. On June 23, 1960, a board of examiners, including Dr. Robert P. Jeub, who will be referred to hereinafter, found that appellant was not mentally ill. She has a sister, Sarah Levin, who lives at 1912 Clinton Avenue South in Minneapolis and who was listed in this report as a relative.
On November 19, 1962, Edward Lewis filed another petition to commit appellant. On November 28, 1962, the petition was dismissed by the probate court, in an order concurred in by the court commissioner, for the reason that it did not list the names and addresses of appellant's nearest relatives. At the time these two petitions were filed, appellant had a lawsuit pending against Edward Lewis and her sister, Sarah Levin, to recover money which she alleged they had taken from her.
On April 3, 1964, one Odessa Walker, who was an acquaintance of appellant, signed a petition to have appellant committed, which petition had been prepared by Viola Grueber, deputy court commissioner of Hennepin County, from information found in the probate court file. In this petition it appeared that in the space provided for the names of relatives of the individual affected by the petition there was inserted "None known of." The petition was signed by Mrs. Walker at the suggestion of Mr. Jamieson, who is a member of the Minneapolis Fire Department Arson Squad. She testified that she would not have signed it on her own initiative and that she did not have first-hand knowledge of many of the facts inserted in the petition by Mrs. Grueber. Prior to signing this petition, Mrs. Walker had consented to appellant's use of a room in the Walker home to store some of her personal belongings. Apparently without Mrs. Walker's consent, she moved in a bed and some furniture and for a short time may have lived in the home. She did not get along with Mrs. Walker and finally removed most of her effects from the house. Mrs. Walker had the locks changed on the house so that appellant could not enter. Appellant induced a young man to enter the home through a window and open the door so that she could enter. Shortly thereafter a fire was discovered in a closet of one of the bedrooms of the house, and apparently it was this event which led to the suggestion on the part of Mr. Jamieson that the petition be signed by Mrs. Walker.
Prior to a hearing on this petition in the probate court, a telegram was sent to Sarah Levin notifying her of the proceeding. Mrs. Grueber testified that this was done because it was thought that Mrs. Levin might be a friend of appellant, but typed on the back of the office copy of the telegram appear the words: "Copy of telegram sent to relative."
On April 3, 1964, appellant was taken to Homewood Hospital. There she was under the observation of Dr. Robert P. Jeub. A hearing on the petition was had in the probate court on April 9, 1964. A board of examiners was appointed consisting of the court commissioner, Dr. George C. Dorsey, Jr., and Dr. James H. Lyons. They found appellant mentally ill and in need of hospital treatment. At the hearing, appellant was represented by an attorney appointed by the court, as well as by an attorney of her own choosing.
On April 13, 1964, an appeal was perfected to the district court. Under Minn.St. 525.79 the trial is de novo. The trial was held on April 23, 1964. After both parties rested, the trial court took the matter under advisement. The next day the judge wrote Dr. Burton P. Grimes, superintendent of the *555 St. Peter State Hospital, where appellant had been confined since the determination by the probate court, informing him of the appeal and requesting that he advise the judge of the progress appellant had made since confined in the St. Peter hospital. The proceedings that followed will be discussed in detail hereinafter.
1. Petitioner moves to dismiss the appeal here on the ground that appellant has failed to file in the district court a statement of propositions of law and fact upon which she relies, as required by § 525.72. Section 525.79, applicable to commitment proceedings, provides in part:
"Any person aggrieved, other than the commissioner of public welfare, may appeal to the district court in the manner prescribed by sections 525.71 to 525.74."
Section 525.72 relates to the trial of the appeal, and it is here that we find a requirement for filing a statement of the propositions of law and fact upon which appellant will rely "after perfection of the appeal." Filing of this statement is not a jurisdictional prerequisite to the perfection of an appeal. In re Estate of Slingerland, 196 Minn. 354, 265 N.W. 21.
Section 525.714, dealing with an ordinary appeal from an order, judgment, or decree of a probate court, provides that the appeal shall suspend the operation of the order, judgment, or decree until the appeal is determined or the district court shall otherwise order. Section 525.79, which deals with the appeal from a commitment order, is exactly the opposite. It provides that the appeal shall not suspend the operation of the order appealed from until reversed or modified by the district court. It then provides:
"* * * The district court shall give the appeal preference over every other proceeding therein, and hear the matter de novo, without a jury, and in a summary manner."
It is obvious that the provisions for filing a statement as required by § 525.72 may delay the hearing up to 60 days after the appeal is perfected. Instead of having a speedy, summary trial, as contemplated in commitment matters, an appellant who has been committed might be required to languish in a hospital for a long period of time before he could have the validity of his confinement determined by the district court. It is obvious that that is not what was intended by the legislature. The statement of propositions of law and fact ordinarily required in an appeal from a probate court would have little value in an appeal involving the commitment of a mentally ill person. The only question involved in such case is whether the person is mentally ill and in need of hospital treatment. It seems quite obvious to us, therefore, that the provisions of § 525.72, dealing with the trial of an appeal, are inconsistent with and have no application to an appeal such as we have here. Petitioner's motion to dismiss is denied.
2. Appellant contends that the petition is insufficient to give the probate court jurisdiction over the subject matter of the proceeding. Section 525.751, subd. 1, reads:
"Any relative or reputable resident may file in the court of the county of the patient's settlement or presence a petition for commitment of a patient setting forth the name and address of the patient, the name and address of his nearest relatives, and the reasons for the petition."
It is conceded that the patient has a sister living in Minneapolis whose address appeared in the probate court file. She also has a brother Joseph, whose whereabouts is unknown, and a foster brother who is not a blood relative or adopted but had lived in her home for a number of years.
The petition was prepared by the deputy court commissioner largely from information obtained from the probate court files. Instead of stating the name and address of the sister, which could easily have been obtained from the probate court files, the petition contained a statement that there *556 were no known relatives. If we assume that the names of relatives are required on the petition in order that they may be notified of the pendency of the proceedings to protect the rights of the patient whose commitment is sought, it would seem that that purpose has been served here by sending a telegram to the patient's sister. She thereby had knowledge of the pendency of the proceedings. While the petition was technically deficient in that respect, we believe that the purpose of the statute has been satisfied.
3. More important, it would seem, is the matter in which the petition was prepared. Obviously, when the statute requires that the reasons for the petition be stated, it presupposes some knowledge on the part of the petitioner of the facts which are stated in the petition. Here, the petitioner admits that she lacked knowledge of most of the facts in the original petition, and she further admits that she would not have instituted the proceedings on her own initiative. However, she contends that the defect was cured by an amendment of the petition prior to the adjourned hearing in the district court. But this petition is something more than a mere pleading. If it was so fatally defective that it did not vest the probate court with jurisdiction, it could not be amended so as to give the district court jurisdiction on appeal. While it is true that the appeal is tried de novo, original jurisdiction lies only with the probate court, and, if it never acquired jurisdiction to proceed, its order was a nullity and there was nothing from which to appeal. In that event, the district court could not acquire original jurisdiction.
However, while we do not condone the manner in which this petition was prepared, we believe that in a proceeding of this kind the main purpose of the petition is to inform the patient, and possibly her relatives, that a claim is being made that she is mentally ill and should be committed to to a hospital. To that limited extent, the petition should not be held insufficient because of technical objections if it serves its main purpose. In these proceedings the court seeks to determine whether the patient is mentally ill and needs hospital care and treatment. It is not an adversary proceeding in the true sense and should be treated with some liberality and not defeated by technicalities if the rights of the patient have been adequately protected. She was represented by an attorney appointed by the court, as well as an attorney of her own choosing, so it can hardly be said that her rights were jeopardized by the insufficiency of the petition.
4. Appellant further contends that it was essential that a guardian ad litem be appointed before the court could acquire jurisdiction. The statutes do not require appointment of a guardian ad litem in an adult commitment proceeding. Appellant contends that due process does.
Appellant relies for support of this contention on In re Wretlind, 225 Minn. 554, 32 N.W.2d 161, in which we dealt with a proceeding for restoration to capacity of a minor. What we said there regarding appointment of a guardian ad litem has no application to this proceeding for commitment of an adult. That case deals mainly with the necessity of a guardian in order that adequate service of notice of hearing may be made. We said with respect to an adult (225 Minn. 562, 32 N.W.2d 167):
"* * * While it is generally true that the appearance of an adult party in an incompetency proceeding constitutes a waiver of process, this rule would not be applicable insofar as a child is concerned."
Nor does State ex rel. Anderson v. U. S. Veterans Hospital, 268 Minn. 213, 128 N.W.2d 710, come to grips with the question now before us. We there directed the appointment of a guardian ad litem who would file a petition for restoration. But in that case the patient had already been adjudged mentally ill and sought restoration *557 to capacity. In a footnote, we said (268 Minn. 226, 128 N.W.2d 719):
"It is proper for the probate court to appoint a guardian ad litem in a proceeding of this nature, as an essential factor in the defense of the committed person's interests. In re Wretlind, 225 Minn. 554, 32 N.W.2d 161; Minn.Const. art. 6, § 6; Minn.St. 525.54 and 525.56, subd. 3(3)."
We did not hold that the probate court would lack jurisdiction to proceed in an adult commitment proceedings unless a guardian ad litem were appointed. Obviously, it is proper for the probate court in a case of this kind to appoint such guardian if the rights of the patient cannot be adequately protected otherwise. We think the rule ought to be that the probate court, or the district court on appeal, may in its discretion appoint a guardian ad litem for a patient whose commitment is sought as a mentally ill person whenever such guardian may be of assistance in protecting the patient, but that, where the patient is adequately represented by counsel and it appears that a guardian ad litem will serve no useful purpose, the appointment of such guardian is not a prerequisite to the jurisdiction of the court. In this case, even appellant's counsel admitted that appointment of a guardian ad litem would serve no useful purpose.
5. The most serious objection to the proceeding relates to the occurrences after the case was originally submitted to the trial court. After both parties had rested, the court said:
"The court understands then that the testimony is closed. The court will take the matter under advisement."
The next day, April 24, the trial judge wrote Dr. Burton P. Grimes, superintendent of the St. Peter State Hospital, where appellant had been confined since her commitment, stating:
"I have pending before me a decision in a matter relative to an appeal on behalf of the above named Lois M. Leary from the judgment of the Probate Court of Hennepin County, Minnesota, dated April 9, 1964, determining that she is mentally ill and a proper person for care and treatment in a hospital for the mentally ill, and committing her to your hospital for such care and treatment. The evidence before me on a new hearing on this matter, de novo, produced testimony on the part of the petitioner that was not too strong and produced testimony on the part of the patient that was rather definite that though she had a character disorder she was not mentally ill in the sense of needing care and treatment in a hospital such as yours.

"In connection with this matter, I obviously want to be careful that the patient's best interests and the public's safety be protected insofar as the Court has authority to do so under the evidence produced before me. It would be helpful for me in considering this matter if I could get a prompt reply and report from you as to how this patient has been progressing since she has been in your hospital for care and treatment. I would appreciate any other observations that you might care to make.
"Appreciating your prompt reply, I beg to remain very truly yours." (Italics supplied.)
Dr. Grimes answered promptly, stating that he would have an opportunity to talk to the judge in his chambers on April 28. He did call on that date and talk to the judge about the case. Neither appellant, her counsel, nor the county attorney was present at such conference. Thereafter, on May 19, the court issued an order on his own initiative providing that the petition in the proceedings "may be amended to conform more specifically with the provisions of Chapter 525 M.S.A." and that the proceedings "be set for further hearing, trial, and determination upon either or *558 both, the original petition or an amended petition, on the 27th day of May, 1964, * * * for the purpose of taking such further testimony as the parties desire." With respect to notice of the hearing, the order provides:
"Let a copy of this order be served by certified mail on counsel herein mentioned and on Jonas G. Schwartz, court appointed counsel, and on the Superintendent of St. Peter State Hospital, and upon the patient at said hospital, and a notice of the said re-hearing by certified mail be sent to all known relatives of the appellant whose addresses are known, and the said Superintendent is hereby ordered to bring the appellant to said hearing and to report to the court the condition of the patient, his diagnosis and findings as to whether or not the patient is in need of further institutional care and treatment."
Service was made upon the parties by mail, but in the meantime appellant had escaped from the hospital on May 10, so service could not be made upon her personally. Apparently she never did receive a copy of the order, nor did she appear at the hearing. Her counsel admitted that she had called him on the telephone and that he had advised her of the hearing, but he did not know her whereabouts nor could he produce her at the hearing.
Appellant now contends that the court could not proceed with the hearing in her absence; that it was improper for the court to discuss the matter privately with Dr. Grimes; and that the evidence adduced at both hearings is insufficient to sustain the court's finding of mental illness.
At the new hearing the court explained his conversation with Dr. Grimes as follows:
"* * * Dr. Grimes did come to the chambers of the Court and did relate some information as to the day by day observations of the patient during the time that she was in the institution. Dr. Grimes was asked no opinion as to her mental condition and said that he personally had made no observations that would authorize him to make any such observations. The record may further show that the Court did not ask Dr. Grimes any opinion as to the mental condition of the patient, simply asking for the observations of he and his hospital staff relative to how she was progressing, the Court's theory being this would be analogous to the same observations that were made by the nurses at the Homewood Hospital at the time that she was a patient there prior to the hearing before the Court Commissioner that resulted in the commitment of this patient."
There is no reason to doubt the accuracy of the court's statement. The difficulty with it is, unlike the decision of the court commissioner based on the observations of the nurses at the Homewood Hospital, the judge was to make the final decision that would determine the validity of appellant's commitment. We are convinced that it was not proper to consult with Dr. Grimes in the absence of appellant or her counsel. Appellant had a right to cross-examine the doctor on any information conveyed to the court that might influence his determination of the pending issues. If this had been an ordinary adversary proceeding, or if the matter had ended with the conversation between the judge and the doctor, we would be compelled to reverse. There is no way of knowing how much impact this interview had on the final decision. However, this proceeding is not an adversary proceeding and there was further opportunity to examine and cross-examine Dr. Grimes. In In re Restoration to Capacity of Masters, 216 Minn. 553, 560, 13 N.W.2d 487, 491, 158 A.L.R. 1210, 1216, we said:
"* * * proceedings of this nature are not adversary in nature, that they are conducted by the state in its *559 character of parens patriae, and that `the manner and method of determining the facts, when jurisdiction has once vested in the court as required by law, rests in its sound judgment and discretion, controlled, of course, by the general rules of judicial procedure.'"
In In re Guardianship of Strom, 205 Minn. 399, 402, 286 N.W. 245, 247, we said:
"With the trial court necessarily rested the primary responsibility of determining fact issues. We are and should be guided by the fact that much must necessarily be left, especially in proceedings of this kind, to the sound judgment and discretion of the trial court. It has the advantage, not possessed here, of being confronted with the witnesses, the alleged incompetent person, and the circumstances surrounding the entire proceeding. It is more capable than we of reaching a clear understanding of the situation and of the mental condition and capacity of the claimed incompetent person."
6. With respect to lack of service on appellant personally after her escape from the hospital, we believe that service upon her counsel was sufficient to comply with due process of law. It is of course necessary that she have an opportunity to be heard. State ex rel. Hussman v. Hursh, 253 Minn. 578, 92 N.W.2d 673. Rule 5.02, Rules of Civil Procedure, provides that where a party is represented by an attorney the service shall be upon the attorney unless service upon the party is ordered by the court. This rule is applicable to an appeal from probate court to district court. In re Estate of Iofredo, 241 Minn. 335, 63 N.W.2d 19. Here, service was made upon appellant's attorney; it was made upon the superintendent of the hospital where appellant was supposed to be confined; and a copy of the order was mailed to her. It failed to reach her only because she had voluntarily absented herself from the hospital. Such voluntary absence should not be permitted to destroy the power of the court to proceed to a completion of a proceeding of this kind. See, Sacks v. Superior Court, 88 Cal.App.2d 808, 199 P.2d 396.
7. We come then to the crucial determination as to whether the evidence sustains the court's findings. As the matter stood at the time the parties rested originally, we have serious doubts that the evidence could have sustained a finding upon which a commitment could rest. Up to that time only Dr. Jeub, whose opinion to say the least was equivocal, and Dr. Lyons, who was one of the examining physicians appointed by the probate court, had testified in behalf of petitioner. Dr. Lyons, according to his own admission, spent at the most 5 to 10 minutes in the presence of appellant. It was his opinion, based on that brief examination, that she was mentally ill. Dr. Irving C. Bernstein was called in behalf of appellant and he was of the opposite opinion.
Upon the new hearing a great deal more evidence was introduced. Dr. Jeub was called again, and his opinion had become more definite that appellant was mentally ill and needed hospitalization. Dr. Lyons was again called, as was Dr. George C. Dorsey, Jr., the other examining physician, who had not been called in the original proceeding. Both were of the opinion that appellant was mentally ill and needed hospital care. Dr. Grimes was called and testified at length and was thoroughly cross-examined. He also was of the opinion that appellant was mentally ill and needed hospital treatment. As the matter then stood, four doctors were of the opinion that appellant was mentally ill and only Dr. Bernstein was of the opposite opinion. In addition to the testimony of the doctors, several lay witnesses were called who testified to the conduct of appellant prior to her commitment. While the testimony of Dr. Grimes relates to observations made after her commitment, in a proceeding of this kind such evidence may be of probative value in determining what her condition *560 was on that date she was originally committed.
We are thus convinced that even though there are many irregularities in this proceeding which we do not condone, the evidence does sustain the court's finding that appellant was mentally ill and that she was in need of hospital care and treatment. To hold otherwise may lead to appellant's being deprived of hospital care which she needs. We can hardly believe that all of these doctors were seeking the commitment of a person who was not mentally ill and in need of hospital treatment. We cannot see that any good would come from a reversal because of the technical errors that have been committed. We must bear in mind that the sole object of a proceeding of this kind is to ascertain as best we can whether the person involved is so mentally ill as to need hospital care. If that fact is established, the decision should stand unless the patient has been deprived of a right to be adequately heard. We do not believe that there has been such a deprivation here.
8. Finally, appellant attacks the constitutionality of the statutes involved. That issue is not before us. Rule 24.04, Rules of Civil Procedure, reads:
"When the constitutionality of an act of the legislature is drawn in question in any action to which the state or an officer, agency or employe of the state is not a party, the party asserting the unconstitutionality of the act shall notify the attorney general thereof within such time as to afford him an opportunity to intervene."
It is conceded that there has been no compliance with this rule. In absence of compliance, we will not consider the constitutionality of a statute. In re Condemnation by Oak Center Creamery Co. v. Grobe, 264 Minn. 435, 119 N.W.2d 729; Lowe v. Patterson, 265 Minn. 42, 120 N.W.2d 313. Appellant contends that, inasmuch as the state is already a party to this proceeding, it is not necessary to serve the attorney general. We do not agree. In 1 Youngquist & Blacik, Minnesota Rules Practice, Authors' Comments to Rule 24.04, p. 686, we find the following:
"The purpose of the notice to the attorney general is to inform him of any attack upon the constitutionality of a statute that may be made in an action to which the state or an agency of the state is not a party, in order that he may seek intervention to defend the statute, especially when he considers the representation in support of the statute is inadequate or when there may be collusion between the original parties."
It is only in those actions or proceedings where the state or an officer, agency, or employee of the state is a party represented by the attorney general's office that an exception exists under this rule. In other words, service must be made upon the attorney general in all cases where he is not already in the case. In the cases covered by the exception, he already has notice. He cannot be expected to have knowledge of every proceeding in which any subdivision of the state represented by a county attorney may raise a constitutional issue as to a statute. It was incumbent upon the appellant in this case, if she wished to raise the constitutionality of the statute, to serve the required notice upon the attorney general.
We are convinced that whatever harm has been done in the areas complained of by appellant has not affected appellant's rights. The trial court undoubtedly was more than ordinarily cautious to protect her rights, and, while the court may have proceeded in a manner that could not be permitted in an ordinary action, we are convinced that in this case it ought not to be required to order another proceeding which, on the same evidence, would unquestionably lead to the same result.
Affirmed.