# GEORGE W. CAMPBELL v. GLENWOOD HILLS HOSPITALS, INCORPORATED, AND ANOTHER.

142 N. W. (2d) 255.

April 15, 1966—No. 39,949.

Stephenson & Shields, George M. Stephenson, and Philip F. Shields, for appellant.

Meagher, Geer, Markham & Anderson, O. C. Adamson II, and Roderick D. Blanchard, for respondents.

Kenneth E. Tilsen, Lynn S. Castner, and Robins, Davis & Lyons, for American Civil Liberties Union, amicus curiae.

NELSON, JUSTICE.

This is an appeal from a judgment of the district court dismissing an action brought against Glenwood Hills Hospitals, Inc., and Raymond T. Rascop, its superintendent, by George W. Campbell to recover damages for loss of wages, impairment of earning capacity, injury to his person, and false imprisonment. The action was based upon defendants' alleged interference with plaintiff's right to due process of law while an involun-

tary patient at defendant hospital and the administration of what plaintiff claims was unauthorized medical treatment. Plaintiff seeks reversal of the judgment, entry of judgment in his favor on the issue of liability only, and trial on the issue of damages.

On February 13, 1962, plaintiff's wife, Helen T. Campbell, by verified petition requested the Hennepin County probate court to inquire into the mental illness of plaintiff and to commit him if he be determined to be ill. Her petition contained a recital of a history of personal violence and threats of violence, parking in front of hospitals all night, crying, and other symptoms of abnormal behavior. The attending family physician, Dr. Arthur Thompson, wrote a letter to the court reciting a history of plaintiff's attacks of violent temper, breaking of furniture, beating his wife, and sleeping in his car all winter. Dr. Thompson indicated that he felt that plaintiff needed psychiatric consultation and care. Acting on this petition, the probate court on February 13, 1962, issued an order directed to the sheriff of Hennepin County, commanding him to take plaintiff into custody and deliver him to the Glenwood Hills hospital for observation and examination. The probate court also authorized the hospital to confine plaintiff for observation and examination until the court directed otherwise, pursuant to the provisions of Minn. St. 525.751.

Deputy sheriffs then took plaintiff into custody and delivered him to defendant hospital. From February 13 to February 21, 1962, he was placed in a locked ward known as C-2 ward and given various medicines. During this time and until May 7, 1962, plaintiff was under the care of Dr. George C. Dorsey, Jr., and it appears that Dr. Dorsey was appointed by the hospital and was not specifically chosen by plaintiff.

On February 20, the court appointed Drs. Andrew J. Leemhuis and Charles F. Kelly as examiners of plaintiff and Desmond Pratt as plaintiff's attorney, and ordered them to appear at a hearing on February 21, 1962. The court also issued a formal notice of examination to plaintiff informing him that the hearing would be held on February 21 pursuant to the petition for hospitalization and possible commitment to St. Peter State Hospital or a private hospital. The notice contained the following paragraph:

"Please inform the officer serving this Notice whether or not you desire to be represented by counsel at this hearing and whether or not you are financially able to obtain counsel."

This notice was personally served on plaintiff. The hearing was held on the day indicated, Mr. Pratt, appointed as plaintiff's counsel, thereafter executing an affidavit that he had represented plaintiff personally at the hearing. The doctors executed oaths promising to faithfully and justly perform their duties in determining whether plaintiff was mentally ill. They found that plaintiff was emotionally unstable, quite neurotic, depressed, agitated, and unable to face reality, and that he showed psychopathic tendencies. Their diagnosis was "[a]gitated depression with psychosis." They also found that a propensity to commit suicide was present, and concluded that plaintiff was a mentally ill person. Dr. Dorsey also wrote a report indicating plaintiff showed symptoms of depression, phobias, immaturity, hostile dependency, impulsivity, poor judgment, and poor control over his behavior. However, at that time Dr. Dorsey suggested release from custody and recommended therapy. Following the hearing of February 21, the probate court issued its order determining that plaintiff, as a mentally ill person, be committed to Glenwood Hills hospital and ordered that he be confined in a "Closed Station" of the hospital until April 26. A judgment was entered pursuant to the order and a warrant of commitment was issued. On April 23, 1962, a notice of reexamination and rehearing, to take place April 24, was served on plaintiff, the notice again requesting plaintiff to inform the sheriff as to his desire for an attorney. Drs. Charles F. Kelly and N. J. Berkwitz were appointed examiners and executed the usual oaths. Desmond Pratt was again appointed plaintiff's counsel and after the hearing again executed an affidavit that he had personally appeared on behalf of plaintiff. The report of the physicians after the reexamination contained a diagnosis of "[a]gitated depression with psychosis" and recommended continued private commitment for a short time.

After the hearing of April 24 the court issued an order extending the period of commitment to May 24 and ordering that plaintiff be confined in a closed station at the hospital until that time. Dr. Dorsey on May 4 executed a recommendation for plaintiff's discharge from the hospital.

In the recommendation Dr. Dorsey stated that plaintiff was possessed of an emotionally unstable personality; was immature, with some emotional lability; that his judgment was questionable at times; and that he overreacted to minor stimuli; but that he was improved and his anxiety had decreased. Pursuant to Dr. Dorsey's recommendation the hospital on the same date discharged plaintiff. The probate court ordered the petition dismissed and plaintiff released from custody on May 24, 1962.

In August 1963 plaintiff commenced an action against defendants and Dr. Dorsey in the United States District Court. In that action, Campbell v. Glenwood Hills Hospital, Inc. (D. Minn.) 224 F. Supp. 27, plaintiff's complaint stated that he sought relief pursuant to 28 USCA, § 1343, and 42 USCA, §§ 1983 and 1985. In this action he alleged at length that the defendants, by reason of the above-described commitment, had deprived him of his civil rights and privileges secured to him by the Constitution and laws of the United States and that, as a consequence, he was deprived of his liberty without due process of law, demanding damages of $310,000. The Federal court held that he had no cause of action against defendants in regard to any claimed violation of constitutional or civil rights, and dismissed the action on December 11, 1963. No appeal was taken therefrom.

■ On December 7, 1962, plaintiff commenced this action. On January 27, 1965, it was dismissed on the merits and plaintiff appealed from the judgment of dismissal.[1] Although the present action was a personal, private tort action in which plaintiff again claimed $310,000 damages for alleged false imprisonment and technical assault and battery, he also alleged that his "commitment and confinement * * * was without due process of law and in violation of plaintiff's constitutional rights." We think it clear that with respect to claimed violations of plaintiff's Federal constitutional rights, the decision in the Federal court action is res judicata. Judge Devitt, who wrote the opinion in

---

[1] Rule 41.02(3), Rules of Civil Procedure, provides: "Unless the court in its order for dismissal otherwise specifies, a dismissal under this rule and any dismissal not provided for in this rule or in Rule 41.01, other than a dismissal for lack of jurisdiction or for lack of an indispensable party, operates as an adjudication upon the merits."

Campbell v. Glenwood Hills Hospital, Inc. *supra,* made clear the issues in that action in the following statement (224 F. Supp. 29):

"* * * This action is brought against the hospital, the superintendent of the hospital, Raymond T. Rascop, and an attending physician, George C. Dorsey, a member of the staff of the hospital, on the theory that these defendants, acting under color of state law, denied the plaintiff the right to secure counsel, withheld from him notice of the Probate Court hearing, caused him to be falsely imprisoned, subjected him to assault and battery, deprived him of use of the United States mails and wrongfully administered him drugs which deprived him of his mental faculties prior to and during the hearings, and that these acts denied plaintiff access to the courts during his confinement and prevented preparation of a defense for the hearing on his alleged mental illness. It is claimed that these acts (or omissions) made the commitment and detention in the hospital without due process of law and 'subjected plaintiff to the deprivation of rights, privileges, and immunities secured to him by the Constitution and laws' of the United States."

After considering the applicable Federal and Minnesota laws and cases, the Federal court concluded (224 F. Supp. 32):

"The duty to secure counsel and the duty to give notice of a hearing to the patient are clearly imposed upon the Probate Court under Minnesota law. While there is no doubt that a deprivation of these rights constitutes a deprivation of due process, Hussman v. Hursh, 253 Minn. 578, 92 N. W. 2d 673 (1958), an attempt to impose upon these defendants the responsibility of an alleged breach of these duties is frivolous. The other alleged acts appear to be in violation of private rights, and, even assuming infringement, do not constitute deprivation of rights cognizable under the Civil Rights Act. Spampinato v. M. Breger & Co. [(2 Cir.) 270 F. (2d) 46, certiorari denied, 361 U. S. 944, 80 S. Ct. 409, 4 L. ed. (2d) 363, rehearing denied, 361 U. S. 973, 80 S. Ct. 597, 4 L. ed. (2d) 553].

"The superintendent and doctors working in a hospital, whether it is a private institution or a state hospital, should not be held responsible to determine the validity of a court order of commitment where, on its

face, the order appears to be valid. Kenney v. Fox, 232 F. 2d 288 (6th Cir.), cert. denied, 352 U. S. 855, 77 S. Ct. 84, 1 L. Ed. 2d 66 (1956). Where they fully comply with the order of commitment (and there is no allegation in this case that they have not) there is immunity from responsibility for the ensuing confinement. See Hoffman v. Halden, 268 F. 2d 280, 300 (9th Cir. 1959). See also, in this connection, Duzynski v. Nosal, 324 F. 2d 924. (7th Cir. 1963).

\* \* \* \* \*

"As noted, it is not every private right which is protected by the Constitution. If there was in fact a false imprisonment or assault and battery, redress for these private wrongs is in the exclusive province of the state. \* \* \*

"For the foregoing reasons the motion to dismiss is granted. The plaintiff may have a cause of action in the state court. He doesn't have one here."

It is clear that the decision, involving the same parties, the same facts, the same claims, and the same law as the one before us, constitutes a final adjudication of plaintiff's Federal claims under the doctrine of res judicata. Plaintiff had his day in court and the decision was against him on the merits. He failed to appeal and thus is foreclosed from asserting claims based upon the Federal Constitution and statutes.

When the case came on for trial, counsel for both parties stipulated to the material facts regarding the issue of liability and further stipulated that the probate court file involving plaintiff and the Glenwood Hills hospital record regarding plaintiff be admitted into evidence as the court's exhibits.

Thereafter, defendants moved the court to dismiss plaintiff's cause of action and the court granted that motion. On March 17, 1965, plaintiff moved the court to vacate the order of dismissal, grant summary judgment for plaintiff on the issue of liability only, and for trial on the issue of damages. These motions were denied and on April 5, 1965, judgment was entered on the trial court's order for judgment of dismissal.

As the trial court made it clear in a memorandum accompanying its order for dismissal, an essential in tort law is the breach of a legal duty owed by the wrongdoer to the injured party, and for the plaintiff to

recover in the instant action it is implicit that the alleged deprivation of rights must have resulted from a breach of duty owed by defendants. The duty to secure counsel for plaintiff and to give him notice of hearing is clearly imposed upon the probate court under Minnesota law. While there is no doubt that deprivation of these rights constitutes a denial of due process, an attempt to place upon defendants the responsibility for an alleged breach of these duties is improper. Plaintiff's right to legal counsel in order to defend himself at the sanity hearing need not be questioned, but this right was not one for which defendants were responsible or one which they could or did take away from plaintiff. Plaintiff being before the probate court, it was its duty to protect his rights.

The trial court further made it clear in its memorandum that the record of the probate proceeding appeared to be valid on its face and the trial court therefore could not permit a collateral attack on the proceeding. This correctly states the law. Relying on State ex rel. Hussman v. Hursh, 253 Minn. 578, 92 N. W. (2d) 673; Kenney v. Fox (6 Cir.) 232 F. (2d) 288; and Hoffman v. Halden (9 Cir.) 268 F. (2d) 280, the trial court held that the superintendent and doctors working in a hospital, whether it is a private institution or a state hospital, ought not to be held responsible to determine the validity of a court order of commitment where, on its face, the order appears to be valid and that where they fully comply with the order, there is immunity from responsibility for the ensuing confinement.

■ It was held by this court in Craigmile v. Sorenson, 248 Minn. 286, 80 N. W. (2d) 45, that where a case is submitted to the trial court upon a stipulation that the decision may be based upon the files, records, and proceedings therein as well as upon the facts stipulated, the court's findings did not have to be based only on the stipulated facts. Similarly, here the court in ruling on defendants' motion for dismissal could properly consider not only the facts stipulated to by the parties but also the probate court file and hospital record admitted into evidence by stipulation.

■ Plaintiff and the American Civil Liberties Union, Minnesota Branch, which filed an amicus curiae brief in plaintiff's behalf, argue that

the arrest-and-hold provision of Minn. St. 525.751 is repugnant to the due process clause of the Minnesota Constitution. They failed, however, to comply with Rule 24.04, Rules of Civil Procedure, which provides:

"When the constitutionality of an act of the legislature is drawn in question in any action to which the state or an officer, agency or employe of the state is not a party, the party asserting the unconstitutionality of the act shall notify the attorney general thereof within such time as to afford him an opportunity to intervene."

Under the circumstances the issue of the constitutionality of that and all other provisions of the Probate Code is not before the court in this case. See In re Condemnation by Oak Center Creamery Co. v. Grobe, 264 Minn. 435, 119 N. W. (2d) 729, which held that where an appeal directly challenges the constitutionality of a statute and the appellants fail to serve notice of appeal upon the attorney general as required by Rule 24.04, the appeal must be dismissed for want of jurisdiction.

■ Plaintiff says that his action is not directed against defendants for what defendants did pursuant to a valid court order, but for their conduct in preventing him from exercising those rights essential to due process, particularly the right to have counsel of his own choice. He argues that defendants have attempted to direct attention away from the stipulation of facts by misreading it and then premising their position on distortions thereof and calls attention especially to the following portion of the stipulation:

"At all times material herein, as aforesaid, and after February 21st, 1962, plaintiff was not permitted to use the United States mails, to make telephone calls, except as disclosed by the hospital records, to have recourse to the courts or to contact or consult an attorney or doctor of his choice, although he demanded to do so."

In effect, plaintiff contends he was held incommunicado. In determining whether that was so, we must search the contents of the orders and directives of the probate court file and the hospital record as well as the stipulation of facts.

The hospital record shows that the initial "Physicians Orders" contain the following item: "May call an attorney." On February 15, Dr.

Dorsey expanded the initial orders by specifying "Can call home" and "Wife can visit." Nowhere in the hospital record from February 13 to February 21 is there the slightest indication that these orders were in any way violated. The telephone was there and what use plaintiff may have made of it to secure the services of an attorney is unknown. Plaintiff claims he told the staff that he wanted "an attorney or doctor of his choice." The hospital record, however, affirmatively shows that plaintiff was afforded the privilege of calling any attorney he chose to. The probate court appointed an attorney to represent plaintiff at the hearings.[2] The notices which were personally served on plaintiff by the sheriff also clearly told plaintiff to tell the sheriff whether he wanted an attorney. Thus, it is clear that plaintiff did have a direct, personal opportunity to communicate with the court concerning an attorney, and that occurred more than once.

It seems clear also that defendants are in no way responsible for the failure of plaintiff's court-appointed attorney to communicate with plaintiff or for any determination by whomever made that plaintiff was not to be physically present at some of the hearings.

It would not be unreasonable to assume that plaintiff's wife and the family physician, Dr. Thompson, convinced the probate court that there was good reason to believe that plaintiff was mentally ill and in need of treatment and to this end the probate court ordered the plaintiff confined as was done, pending a determination of such claimed mental illness. The clear implication of the court's order, as well as the subsequent commitment orders, is that plaintiff was not to be treated by defendants as a completely free agent. Certainly, it is clear that if plaintiff had injured himself or others due to the failure of defendants to confine him properly and to control his activities properly civil liability would then have been imposed upon defendants.[3]

---

[2] Minn. St. 525.751, subd. 4, provides: "In all such proceedings the county attorney shall appear and represent the petitioner. If the patient so requests, or is held for observation under order of the court, the court shall appoint counsel for him, if he is financially unable to obtain counsel. In all other cases the court may appoint counsel for the patient if it determines the interests of the patient requires counsel."

[3] Compare Mounds Park Hospital v. Von Eye (8 Cir.) 245 F. (2d) 756,

Following plaintiff's commitment on February 21, Dr. Dorsey's "Physicians Orders" reveal that on February 22 these entries were made: "Family can visit"; "Can call family"; "Don't let him send in job resignation." April 4 reveals the entry, "Restrict any visiting by a Mrs. Bunn, also known as Jane Prince." On April 5, the entry says, "Restrict visitors to family. Restrict phone calls to wife & family." The nurses' notes reveal almost daily visits by plaintiff's wife, frequent visits by plaintiff's sister, and frequent telephone calls to and from plaintiff's family. In addition plaintiff on various occasions had other visitors. On March 3 plaintiff asked a nurse, "Do you keep a list of phone calls I make — my wife accuses me of calling different girls from here and of getting cards and letters from them." On March 29, the entries indicate plaintiff's wife complained about his outside calls. On April 5 plaintiff became upset when told phone calls were restricted. The entry says: "Wanted to call attorney and is now writing a letter. States he knows his wife is behind all this." The letter apparently was mailed. An entry on April 9 shows plaintiff was "not granted permission to use phone.". On April 13, an entry states: "In D.R. [dining room] pt. appeared to give letter to other pt. When pt. afterward approached did not admit to mailing letter but did admit he was making phone call. Mr. Campbell was approached on this matter and stated pt. was going to call lawyer for him. Stated he didn't know letter couldn't be mailed for him. Stated wife put me here and as soon as I'm out of here she will be put on court hold and be here next door." An entry on April 20 shows plaintiff "wanting to use phone."

Any reading of the hospital record will reveal, as these references do, little if any restrictions until April, when visitors and calls were restricted to the family. Dr. Dorsey's reasons for this are not recorded. No prohibition on letters is revealed except Dr. Dorsey's refusal to let plaintiff resign his job; only one mention of a desire to call an attorney was made; and when this request was denied, plaintiff wrote a letter which was mailed. In the context of the entire hospital record in which plaintiff's conduct, problems, and activities are fully detailed, the restrictions indi-

70 A. L. R. (2d) 335, with Clements v. Swedish Hospital, 252 Minn. 1, 89 N. W. (2d) 162.

cated seem reasonable and the hospital record does not indicate that plaintiff was denied reasonable communication privileges or opportunity to contact a lawyer.

7. Plaintiff's last contention is that the medical treatments administered to him were unauthorized and therefore were assaults and batteries. However, all of the acts of defendants were done pursuant to valid court orders, in which plaintiff was found to be "in need of care and treatment," and to statutory provision for "institutional care and treatment" of persons committed as mentally ill. Minn. St. 525.753, subd. 1. Defendants never instituted or participated in the commitment proceedings and carried out the order of the probate court in confining plaintiff in a closed ward. The course of treatment thereafter applied was determined and effected by competent institutional doctors who would have been at fault if they had not attempted to help plaintiff. It is significant that the record indicates that plaintiff's wife signed a formal authorization for shock treatments which were undertaken pursuant to Dr. Dorsey's orders in early April. Following the treatments plaintiff improved to the point where Dr. Dorsey voluntarily ordered his discharge on May 4.

If defendants are to be held liable to plaintiff in this case, then every psychiatric hospital, state or private, and its superintendent would be liable in tort to patients in spite of full compliance with valid court orders and applicable statutory provisions.

We have given consideration to the cases upon which plaintiff relies including Chandler v. Fretag, 348 U. S. 3, 75 S. Ct. 1, 99 L. ed. 4; Lewis v. Brautigam (5 Cir.) 227 F. (2d) 124; Mohr v. Williams, 95 Minn. 261, 104 N. W. 12, 1 L. R. A. (N. S.) 439; and State ex rel. Blaisdell v. Billings, 55 Minn. 467, 57 N. W. 206, 794. We have also carefully considered the following Minnesota cases: In re Wretlind, 225 Minn. 554, 32 N. W. (2d) 161; State ex rel. Hussman v. Hursh, *supra;* State ex rel. Anderson v. U. S. Veterans Hospital, 268 Minn. 213, 128 N. W. (2d) 710; and In re Appeal of Leary, 272 Minn. 34, 136 N. W. (2d) 552. These cases do not consider the issues raised by a mental patient's claim of tort liability against the institution in which the plaintiff was committed. We think, however, that the remarks of the court in the Leary case are of significance here. Mr. Chief Justice Knutson, after

stating that commitment proceedings are not an adversary proceeding in the true sense, concluded (272 Minn. 46, 136 N. W. [2d] 560):

"We are thus convinced that even though there are many irregularities in this proceeding which we do not condone, the evidence does sustain the court's finding that appellant was mentally ill and that she was in need of hospital care and treatment. To hold otherwise may lead to appellant's being deprived of hospital care which she needs. We can hardly believe that all of these doctors were seeking the commitment of a person who was not mentally ill and in need of hospital treatment. We cannot see that any good would come from a reversal because of the technical errors that have been committed. We must bear in mind that the sole object of a proceeding of this kind is to ascertain as best we can whether the person involved is so mentally ill as to need hospital care. If that fact is established, the decision should stand unless the patient has been deprived of a right to be adequately heard. We do not believe that there has been such a deprivation here."

We conclude that since the hospital and its superintendent and doctors have fully complied with the orders of commitment for mental illness, they must be accorded immunity from responsibility for the confinement and authorized, reasonable treatment of plaintiff. The judgment of dismissal upon the particular facts of this case must stand.

Affirmed.