Harold UNDERHILL, Respondent,

v.

John KNOX, D.C., Appellant.

No. C4–84–639.

Court of Appeals of Minnesota.

Sept. 25, 1984.

Gilmore, deLambert, Aafedt & Forde, P.A., Janet Monston, Minneapolis, for respondent.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, R.D. Blanchard, Robert E. Salmon, Minneapolis, for appellant.

Heard, considered and decided by SEDGWICK, P.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

NIERENGARTEN, Judge.

Respondent Underhill commenced an action against appellant Knox, a chiropractor, alleging malpractice for failing to make an accurate diagnosis of a fractured femur. Knox defended by asserting the two year statute of limitations applicable to "physicians" under Minn.Stat. § 541.07(1) (1980) and moved for summary judgment dismissing Underhill's complaint. On January 20, 1983, a special term judge denied the motion. On March 27, 1984, the trial court, being of the view that the question presented was important and doubtful, certified the issue to this court pursuant to Rule 103.03(h), Minnesota Rules of Civil Appellate Procedure. We affirm.

## FACTS

This case arises out of the chiropractic care and treatment provided respondent Harold Underhill between June and September 1975 by appellant John Knox, a chiropractor licensed under Minn.Stat. Chap. 148. Underhill alleges that Knox failed to diagnose a fractured femur and that, as a result of this alleged negligent diagnosis and treatment, Underhill has suffered injuries to his right leg for which he claims damages.

Underhill did not commence this action until June 1981. The delay was attributed to the fact that it was not until March 1981, when Underhill was examined by a medical doctor for a fall which reinjured his right leg, that it was learned he had sustained a fracture of his right leg when he fell in May 1975.

Knox alleges Underhill's claim is barred by Minn.Stat. § 541.07(1) (1980) which imposes a two year statute of limitations on malpractice actions against physicians, dentists, hospitals and sanatoriums. It is agreed that the 1982 amendment to section 541.07(1), wherein the Legislature expressly incorporated "health care professionals" within the purview of the statute, does not govern Underhill's cause of action. *See* 1982 Minn.Laws ch. 546, § 2. Knox therefore moved for summary judgment dismissing Underhill's complaint.

The trial court denied Knox's motion, concluding Underhill's case is subject to a six year statute of limitations under Minn. Stat. § 541.05, subd. 1(5) (1980) because chiropractic malpractice actions were not included within the two year statute of limitations until the 1982 amendment to Minn.Stat. § 541.07. The trial court reasoned that the "Minnesota Legislature has historically distinguished between physicians, surgeons and osteopaths on one hand and other occupations in the field of public health care on the other." The trial court certified the question to this court pursuant to Minn.R.Civ.App.P. 103.03(h).

## ISSUE

Certified Question: Are doctors of chiropractic included within the purview of *Minn.Stat.* § 541.07 as "physicians", prior to June 4, 1981, when this action was commenced?

## ANALYSIS

### I

The general statute of limitations provides for a six year limitation period "for any other injury to the person or rights of another, not arising on contract, and not hereinafter enumerated." Minn.Stat. § 541.05, subd. 1(5) (1982). An exception to the six year period is set forth in section 541.07.

Prior to 1982, section 541.07(1) provided:

Except where the uniform commercial code otherwise prescribes, the following actions shall be commenced within two years:

(1) For libel, slander, assault, battery, false imprisonment, or other tort, resulting in personal injury, *and all actions against physicians, surgeons, dentists, hospitals, sanatoriums, for malpractice, error, mistake or failure to cure,* whether based on contract or tort * * *.

Minn.Stat. § 541.07(1) (1980) (emphasis added). Effective March 23, 1982, section

541.07(1) was amended to provide as follows:

(1) For libel, slander, assault, battery, false imprisonment, or other tort, resulting in personal injury, and all actions against physicians, surgeons, dentists, *other health care professionals as defined in section 145.61, and veterinarians as defined in chapter 156*, hospitals, sanitoriums, for malpractice, error, mistake or failure to cure, whether based on contract or tort * * *.

1982 Minn.Laws ch. 546, § 2. The amendment applied to all causes of action arising on or after March 23, 1982. *Id.* § 3.

█ A cause of action for medical malpractice accrues when treatment ceases. *Johnson v. Winthrop Laboratories Division of Sterling Drug, Inc.*, 291 Minn. 145, 190 N.W.2d 77 (1971). Underhill's cause of action accrued in 1975. Underhill concedes that if a chiropractor falls within the definition of "physician" under Minn.Stat. § 541.-07 (1980), the two year statute of limitations would bar his claim.

Knox attempts to define the word "physician" as including a chiropractor, arguing this is consistent with legislative intent. Knox argues at length that there is no fundamental difference in the nature or character of the work performed by a physician and a chiropractor. Although the similarities and differences between the two have been the subject of ardent discussion between the two disciplines from time immemorial, that is not what is at issue in this case. The issue is the legislature's intent when it enacted Minn.Stat. § 541.07 (1980).

*Statutory definitions and case law.*

In 1907, the term "physician" clearly did not include a chiropractor. In *Goss v. Goss*, 102 Minn. 346, 351, 113 N.W. 690, 692 (1907), the supreme court stated:

A physician is one who is versed in medical science, a branch of which is surgery; and a surgeon is a physician who treats bodily injuries and ills by manual operations and the use of surgical instruments and appliances. A physician, as defined by our statute and in common parlance, is a person schooled in both medicine and surgery.

*Id.* Chiropractic is now defined as:

the science of adjusting any abnormal articulations of the human body, especially those of the spinal column, for the purpose of giving freedom of action to impinged nerves that may cause pain or deranged function.

Minn.Stat. § 148.01, subd. 1 (Supp.1983). Section 148.01, subd. 2 expressly provides:

The practice of chiropractic is not the practice of medicine, surgery, or osteopathy.

*Id.* § 148.01, subd. 2. In *Ingebritson v. Tjernlund Manufacturing Co.*, 289 Minn. 232, 183 N.W.2d 552 (1971), the supreme court held chiropractic services were not compensable under the existing workers' compensation statute. The court reasoned that a chiropractor was neither a physician nor were chiropractic services within the meaning of medical, surgical or hospital treatment as that phrase was used in the statutes. *Id.* at 234–37, 183 N.W.2d at 553–54. "These statutes * * * do not in any way employ the word 'physician' in relation to chiropractors." *Id.* at 236, 183 N.W.2d at 554 (footnote omitted).

*Organization of Statutes.*

The organization of the Minnesota Statutes suggests the legislature distinguished the medical and chiropractic professions. The legislature has consistently used the term physician as referring to one who practices medicine or who is a surgeon. Chapter 147, entitled "Physicians and Surgeons, Osteopaths," sets forth the licensing and other miscellaneous requirements for the medical profession. Not one reference is made to a chiropractor. Section 147.01, subd. 1 provides for a board of medical examiners consisting of 11 members, including seven who hold a degree of doctor of medicine, and one who holds a degree of doctor of osteopathy. There is no provision for a chiropractor. A comparison of the contents of section 147.01, subd. 1 with the chapter title, "Physicians and Surgeons, Osteopaths," indicates that an individual

holding a degree of doctor of medicine is either a physician or a surgeon and one holding a degree of doctor of osteopathy is an osteopath. A chiropractor holds neither of these degrees; his or her licensure is established by chapter 148, not chapter 147.

Chapter 148 is entitled "Occupations in Protection of Public Health." The public health area includes not only chiropractors, but also licensed practical nurses, midwives, masseurs and masseuses, optometrists, physical therapists and psychologists. Neither Chapter 147 nor 148 employ the word physician in relation to chiropractors.

*Other Sundry Statutes.*

Knox relies on several other statutes which he claims are dispositive of the Legislature's intent to recognize chiropractors as physicians.

First, Knox relies on Minn.Stat. § 146.01 (1982) which defines the practice of healing to include the practice of medicine or surgery, the practice of osteopathy, and the practice of chiropractic. The argument is without merit. The legislature was very careful in its selection of the terms used. Chapter 146 is entitled "Healing Arts, Registration." Section 146.01 only recognizes chiropractic as a healing art. It does not define physicians as including chiropractors.

Next, Knox refers us to the language in Minn.Stat. § 148.08, subd. 2 (1982), which provides:

Chiropractors shall be subject to the same rules and regulations, both municipal and state, that govern other licensed doctors or physicians in the control of contagious and infectious diseases, and shall be entitled to sign health and death certificates, and to all rights and privileges of other doctors or physicians in all matters pertaining to the public health, except prescribing internal drugs or the practice of medicine, physical therapy, surgery and obstetrics.

*Id.* Knox claims this language compels the conclusion that the legislature intended to group chiropractors with the general category of physicians. On the contrary, the language of the statute is clear: the legislature granted chiropractors some of the rights and privileges afforded physicians but specifically prohibited them from the practice of medicine. The legislature clearly did not intend to use the terms chiropractors and physicians interchangeably.

Lastly, Knox refers to Minn.Stat. § 62A.15, subd. 2 (Supp.1983), which provides:

All benefits provided by any policy or contract referred to in subdivision 1, relating to expenses incurred for medical treatment or services of a physician must also include chiropractic treatment and services of a chiropractor to the extent that the chiropractic services and treatment are within the scope of chiropractic licensure.

*Id.* Knox cites this subdivision out of context. Section 62A.15, in its entirety, requires all insurance policies relating to expenses incurred for medical treatment or services of a physician include not only chiropractic services, but also optometric treatment and services of an optometrist and services provided by a registered nurse. Minn.Stat. § 62A.15 (Supp.1983). If Knox's argument has merit, a registered nurse would also be classified as a physician.

*1982 Amendment to Section 541.07.*

■ The act amending section 541.07 was entitled:

An act relating to civil actions; limitations of actions; providing that actions for malpractice against health care professionals and veterinarians be commenced within two years * * *.

Act of March 22, 1982, 1982 Minn.Laws ch. 546. A chiropractor is a health care professional, Minn.Stat. § 145.61, subd. 2 (1982) and, without question, is now protected by the two year statute. But to argue that chiropractors were included within the two year statute of limitations before 1982 flies in the face of clear legislative intent. If the legislature had wanted to carve out an exception for chiropractors prior to 1982, it would have done so expressly. By virtue

of the express addition of health care professionals in the March 23, 1982, amendment, public health occupations were not within the purview of section 541.07 until that date.

## II

Knox argues that to construe Minn.Stat. § 541.07(1) (1980) to exclude doctors of chiropractic would be a violation of the equal protection clauses of the federal and state constitutions. Knox lacks standing to question the statute's constitutionality.

Rule 144, Minnesota Rules of Civil Appellate Procedure provides:

When the constitutionality of an act of the legislature is questioned in any appellate proceeding to which the state or an officer, agency or employee of the state is not a party, the party asserting the unconstitutionality of the act shall notify the attorney general within time to afford him an opportunity to intervene.

Minn.R.Civ.App.P. 144. If the proper notice was not given to the attorney general pursuant to Rule 144, this court will refuse to consider a constitutional issue other than a question which involves the jurisdiction of the court. *See Campbell v. Glenwood Hills Hospitals, Inc.*, 273 Minn. 525, 142 N.W.2d 255 (1966); *Oak Center Creamery Co. v. Grobe*, 264 Minn. 435, 119 N.W.2d 729 (1963). Knox never served notice of the appeal on the Attorney General.

## DECISION

The question certified to us was: Are doctors of chiropractic included within the purview of *Minn.Stat.* § 541.07 as "physicians", prior to June 4, 1981, when this action was commenced?

We answer the question as follows: The Minnesota Legislature did not intend to include chiropractors when it used the term "physicians" in Minn.Stat. § 541.07 (1980). Chiropractic malpractice is therefore subject to a six year limitation period for causes of action accruing prior to March 23, 1982. Since Underhill's cause of action arose prior to this date, it is governed by the six year period under Minn.Stat. § 541.-05 (1980).

Affirmed.